UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WAI FENG TRADING CO. LTD, and | : | |
| EFF MANUFACTORY CO., LTD., | : | |
|      Plaintiffs, | : | |
| | : | |
|      v. | : | C.A. No. 13-033WES |
| | : | |
| QUICK FITTING, INC., | : | |
|      Defendant. | : | |

<u>Consolidated with</u>

| | | |
|---|---|---|
| QUICK FITTING, INC., | : | |
|      Plaintiff, | : | |
| | : | |
|      v. | : | C.A. No. 13-056WES |
| | : | |
| WAI FENG TRADING CO., LTD., | : | |
| EASTERN FOUNDRY & FITTINGS, INC., | : | |
| EASTERN FOUNDRY AND FITTINGS, LLC, | : | |
| NINGO EFF MANUFACTORY CO, LTD., | : | |
| f/k/a/ NINGO W&F MANUFACTORY CO., LTD., | : | |
| WAI MAO COMPANY, LTD., | : | |
| CIXI CITY WAI FENG BALL VALVE | : | |
| COMPANY, LTD., | : | |
| W&F MANUFACTURING, and | : | |
| CHI YAM "ANDREW" YUNG, | : | |
|      Defendants. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

     This report and recommendation incorporates by reference[1] a report and recommendation

("R+R I") issued earlier today, which addressed three and most of a fourth of six motions for

---

[1] In R+R I, the Court defined terms and established citation protocols; except as otherwise indicated, those terms and protocols will be used in the same way with the same meaning in this opinion.

summary judgment filed by the parties in these consolidated cases. ECF No. 230.[2] In this second report and recommendation ("R+R II"), the Court addresses the remainder of the pending summary judgment motions.

The motions addressed here are principally focused on the claims in the 13-33 complaint, which is an action to collect unpaid invoices. The Wai Feng parties[3] seek to recover $432,611.47 for plumbing push-fit products that were undisputedly sold to, delivered to and accepted by Quick Fitting. These motions also focus on Quick Fitting's many affirmative defenses in 13-33, as well as its counterclaims in 13-33 and claims in 13-56 alleging that it received unmerchantable and defective goods that were negligently manufactured in breach of the parties' agreement, the implied warranties of merchantability and fitness for a particular purpose and the implied duty of good faith. The first of the summary judgment motions (ECF No. 180) addressed here seeks judgment on behalf of the Wai Feng parties for the full amount of the unpaid invoices. A portion of the second motion (13-56 ECF No. 254)[4] is the Wai Feng parties' challenge to the sufficiency of Quick Fitting's claims and counterclaims that the push-fit products were defective and unmerchantable. Finally, R+R II addresses Quick Fitting's motion seeking judgment in its favor in 13-33 (13-56 ECF No. 259), claiming that neither of the Wai

---

[2] Unless otherwise indicated, all citations to the documents of record in these cases will be to 13-33, which is the lead case.

[3] In R+R II, the term "Wai Feng parties" is used differently from the same term as used in R+R I. Here, it is limited to the entities that are the plaintiffs in 13-33: Wai Feng Trading Co. Ltd. ("Wai Feng Trading") and EFF Manufactory Co., Ltd. ("EFF Manufactory").

[4] This motion for summary judgment is an attack on Quick Fitting's counterclaims in 13-33 and claims in 13-56. In R+R I, the Court dealt with the portion of the motion that challenged the claims not related to the charge of delivery of defective products, such as misappropriation of trade secrets, defamation, civil conspiracy and fraud. Here the Court addresses the Wai Feng parties' attack on the defective product claims. Although filed only in 13-56, this motion challenges not only the defective products claims in 13-56, but also the analogous counterclaims in 13-33.

Feng parties has standing to recover for the unpaid invoices and that this deficit vitiates Quick Fitting's duty to pay.

In reliance on section 607(1) of the Rhode Island Uniform Commercial Code ("UCC"), R.I. Gen. Laws § 6A-2-607(1), as interpreted in J.L. Clark Mfg. Co. v. Gold Bond Pharm. Corp., 669 F. Supp. 40, 42-43 (D.R.I. 1987), as well as the Rhode Island common law, I recommend that the Court grant summary judgment in favor of Wai Feng Trading for $432,611.47 based on Quick Fitting's breach of its duty to pay the invoices for the price of goods sold, delivered and accepted, but deny summary judgment on EFF Manufactory's claim for the same sum. I also recommend that the Court deny Quick Fitting's motion for summary judgment with respect to the claims of Wai Feng Trading, but grant it with respect to the claims of EFF Manufactory. Finally, I recommend that the Court deny summary judgment on Quick Fitting's counterclaims based on defective products because factual disputes permeate its claims that some of the goods were defective and did not conform to express and implied warranties – these issues should proceed to trial; but summary judgment should enter against Quick Fitting on its negligence claim.

## I.      BACKGROUND[5]

Andrew and Jacky Yung are brothers who, together with their father, own and operate a network of companies in China, Canada and the United States (Massachusetts) that are engaged in the business of manufacturing, selling and distributing plumbing parts and components made from both copper and polyvinyl chloride ("PVC"). QF SUF # 1 ¶¶ 7-8. In addition to the Wai Feng parties (Wai Feng Trading and EFF Manufactory), their affiliates are Wai Mao, EFF Inc. and EFF LLC. As relevant here, it is undisputed that manufacturing was done at a factory in

---

[5] This background assumes the reader's detailed familiarity with the background in R+R I.

China, while Wai Feng Trading and Wai Mao are Canadian companies that served respectively as the seller/distributor and importer of plumbing parts sold in North America, including the push-fit products sold to Quick Fitting. WF SUF # 1 ¶ 4.

In February 2010, Quick Fitting, a Rhode Island designer/seller of highly engineered push-fit plumbing parts, and a "Licensee," using the trade name W&F Manufacturing that consisted of Wai Feng Trading and Wai Mao, ostensibly together with Andrew Yung, who signed for an unrelated entity called CCWFBV,[6] entered into a license and supply agreement called the 2010 License/Supply Agreement. WF Ex. 4. Following the execution of this License/Supply Agreement, from October 2010 until July 2012, Quick Fitting issued purchase orders to "W&F" and later to EFF Manufactory.[7] Wai Mao, as importer, sent these to the Chinese manufacturer. WF SUF # 1 ¶ 58; QF SDF # 1 ¶ 58 & # 2 ¶ 58. Push-fit products manufactured[8] to Quick Fitting's specifications were shipped for delivery to Quick Fitting for resale to its customers. WF SUF # 1 ¶ 59. Each shipment to Quick Fitting was accompanied by invoice(s) and shipping documents. Crompton Aff. # 2 ¶ 58. Eight of the invoices (QF Ex. # 3

---

[6] The controversy over the naming of CCWFBV in the 2010 License/Supply Agreement is discussed at length in R+R I; the details will not be repeated here, except to note that the Wai Feng parties insist that the naming of CCWFBV was a mistake committed by Quick Fitting in drafting the document because EFF Manufactory was intended, while Quick Fitting argues the manufacturing was initially done at CCWFBV but that it did not sign the 2010 License/Supply Agreement, which was executed by Andrew Yung who falsely claimed he owned CCWFBV but actually was not authorized to act for CCWFBV. By the time of the manufacturing of the products for which Quick Fitting refused to pay, it is undisputed that EFF Manufactory had executed the 2011 License Agreement and had been the manufacturer for many months.

[7] The authenticity of the purchase orders submitted by Quick Fitting is not disputed. QF SUF # 3 ¶ 32. At first, these purchase orders were addressed to "W & F Andrew Yung," with no address shown, QF Ex. # 3 N at 1-7, 9-18, 20, except that one of the early purchase orders was directed to EFF Manufactory at its Chinese address. Id. at 8. From early March 2011, Quick Fitting was consistently sending its purchase orders to EFF Manufactory, all at the Chinese address of EFF Manufactory. Id. at 19, 21-101.

[8] As noted, the parties vigorously dispute the identity of the Chinese manufacturer. See n.7 supra. Quick Fitting claims that from the beginning of the relationship until May 2011, manufacturing was done at CCWFBV, and after May 2011, when the 2011 License Agreement was signed, it was done at EFF Manufactory. The Wai Feng parties are equally vehement that manufacturing was done at EFF Manufactory throughout the entire period. All of the shipping documents, whose authenticity is undisputed, indicate that the shipper was always EFF Manufactory. WF SUF # 1 ¶ 59; WF Exs. 1 & 2.

SSS) were issued by EFF Manufactory; nevertheless, these invoices were transmitted by Wai

Feng Trading, with a packing list issued by Wai Feng Trading. The balance of the invoices,

including all of the invoices in issue[9] based on Quick Fitting's refusal to pay, were issued by Wai

Feng Trading. WF SUF # 1 ¶ 61; QF SUF # 3 ¶ 134. Except for the invoices it refused to pay,

Quick Fitting wired its payments of the invoices as directed for the benefit of Wai Feng Trading.

WF SUF # 2 ¶ 16 & Ex. 10; QF SUF # 3 ¶ 67.[10] During the period in issue (from October 2011

until June 2012), there were eighteen such wires totaling more than $500,000 paid. WF SUF # 2

¶ 16 & Ex. 10.

The portion of the 2010 License/Supply Agreement that addresses the supply relationship

contemplates that the "Licensee" will manufacture, and Quick Fitting "will purchase," certain

"Finished Products," which are listed on Schedule 1 as consisting of "[a]ll sizes and variations"

of push-fit fittings, valves, controls, supply line, retail packaged products and accessories, as well

as "PEX barb fittings." WF Ex. 4 at 1, 8 (Schedule 1). The 2010 License/Supply Agreement

addresses neither the price of the Finished Products nor the payment and delivery terms. It does

require that the Finished Products must comply with applicable laws, regulations, specified

---

[9] The Wai Feng Trading invoices in issue are authenticated and undisputed. See QF Ex. # 3 EEE; WF Ex. 1 ¶¶ 6-7. However, the parties dispute what (if anything) appeared on the reverse side of the invoices. Quick Fitting contends that they were emailed and that it only received the front side of each invoice so that it has never seen the terms and conditions on the reverse side. To resolve this dispute, the Wai Feng parties stipulated at the hearing that the Court should disregard the terms and conditions on the reverse side of the invoices and that they are not seeking summary judgment with respect to any of the terms and conditions.

[10] In response to discovery propounded in this case, in 2014, Quick Fitting produced a chart showing each wire; this chart contains the admission that the "beneficiary" of each wire was Wai Feng Trading. WF SUF # 2 ¶ 16 & Ex. 10. As far as the summary judgment record reveals, this chart was never withdrawn or corrected. In support of its opposition to the Wai Feng parties' motion, Quick Fitting now contends that this discovery reflected "counsel's assumption," QF SDF # 3 ¶ 16, and, while Crompton still admits that payment was wired as directed, he also now avers that he did not know what entity controlled the account. Crompton Aff. # 2 ¶ 60. I find that the Wai Feng parties were entitled to rely on a chart produced in discovery four years ago (and never corrected) and therefore deem this fact to be undisputed. In any event, in the face of the Wai Feng parties' averment that all payments were made to Wai Feng Trading (WF Ex. 1 ¶ 14) and Quick Fitting's 2014 admission to the same effect (ECF No. 176-11), Crompton's 2018 denial of knowledge (one way or the other) is insufficient to controvert the otherwise undisputed fact that Quick Fitting wired its payment for the benefit of Wai Feng Trading throughout the history of the relationship.

testing standards and certifications, as well as that they must be free of defects, dirt spring and discoloration.  Id. ¶ 4(b, d).  The "Licensee" is obliged to replace non-compliant products within ten days of notification by Quick Fitting.  Id. ¶ 4(d).

The parties dispute when and how the 2010 License/Supply Agreement was terminated.[11] The Wai Feng parties contend that they terminated it for cause (based on Quick Fitting's breach) through notice given by their Canadian solicitor on December 7, 2012, so that Quick Fitting's obligation to pay Wai Feng Trading pursuant to the 2010 License/Supply Agreement persisted throughout the relevant period.  ECF No. 223 at 5; ECF No. 223-1, at 1.  Quick Fitting challenges the effectiveness of the Wai Feng parties' letter, claiming that it was not written by the right entities.  ECF No. 228 at 7-8.

For its part, Quick Fitting now argues that the 2010 License/Supply Agreement was terminated by operation of law in May 2011, when the parties entered into two new agreements, namely the 2011 NDA and the 2011 License Agreement.  It is undisputed that Wai Feng Trading is not a party to either of the 2011 Agreements.  However, unlike the 2010 License/Supply Agreement, neither of the 2011 Agreements actually established a supply relationship, and neither states that it was intended to replace the 2010 License/Supply Agreement.[12]  Rather, one – the 2011 NDA – through mutual mistake names EFF LLC and addresses only confidentiality,

---

[11] The termination clause (¶ 5) in the body of the 2010 License/Supply Agreement provides that it continues until terminated; termination without cause requires 120 days' notice, but termination with cause needs only thirty days' notice; and the Agreement may be immediately terminated by a breach of the duty to manufacture the Products to specification or breach of the duty to manufacture exclusively for Quick Fitting.  WF Ex. 4 ¶ 5(a-d).  Schedule 2 of the 2010 License/Supply Agreement establishes a different term: rather than open-ended duration, subject to termination on notice, Schedule 2 provides that the duration is "a forty-eight (48) month period" from the date of execution.  Id. at 9.  Quick Fitting was the drafter of the document.

[12] The 2011 License Agreement expressly addresses its impact on prior agreements, in that it states that "[t]his Agreement shall supersede and replace all prior documents titled Non-Disclosure Agreement, executed by the parties."  WF Ex. 11 ¶ 1.2.  This provision arguably means that the 2011 NDA became a nullity as it is titled "Non-Disclosure Agreement," but has no impact on the ongoing viability of the 2010 License/Supply Agreement.

while the other – the 2011 License Agreement – grants a license to and imposes various restrictive covenants on EFF Manufactory.  After the 2011 Agreements were executed, consistent with the 2010 License/Supply Agreement, Wai Feng Trading continued to act as the "seller" in that it issued most of the invoices and transmitted those that it did not issue with its packing list; similarly, Quick Fitting continued to pay the invoices by wiring funds to an account for the benefit of Wai Feng Trading, as it had been directed to do since the beginning of the relationship.

Nevertheless, Quick Fitting contends that the 2010 License/Supply Agreement became a nullity with the execution of the 2011 Agreements, that Wai Feng Trading was not named as a party in either of the 2011 Agreements, so that Wai Feng Trading ceased to be a party to a supply relationship with Quick Fitting.  This proposition is squarely contradicted by the Chief Executive Officer of Quick Fitting, David Crompton, whose Fed. R. Civ. P. 30(b)(6) testimony establishes that the two 2011 Agreements were signed to add the name of EFF Manufactory, which had become the manufacturing arm of the Wai Feng parties (ostensibly replacing CCWFBV), and that, otherwise, the 2010 Agreement continued: "So the manufacturing arm's name had changed while everything else hadn't.  So everything else stayed in place, and we created a new agreement surrounding the new manufacturing name."  ECF No. 206-5 at 12; Crompton Aff. # 2 ¶ 12 ("I informed Andrew that Quick Fitting would need new agreements signed concerning confidentiality, non-disclosure, non-competition, and other licensing terms to add [EFF Manufactory].").

Quick Fitting also points out that, in August 2011, Wai Feng Trading stopped operations and, in February 2012, as part of a name-shift from "Wai Feng" to "EFF," the Wai Feng parties announced that EFF Inc. would take over the business of Wai Feng Trading, and Quick Fitting

highlights that it once questioned why its invoices continued to be issued by Wai Feng Trading. QF SUF # 3 ¶¶ 8-9; QF Exs. # 3 CC, DD. However, it is undisputed that, as to the Quick Fitting business, the switch to EFF Inc. did not occur. Instead, Wai Feng Trading ceased all other business operations but continued as the operative entity that issued invoices to Quick Fitting and collected payment from Quick Fitting. WF Exs. 1 ¶¶ 4, 6 & 2 ¶ 13. It is also undisputed that, after the shift to EFF Inc. of all other operations, Wai Feng Trading's only business involved the circumstances that have morphed into this litigation, as well as that all invoices that Quick Fitting received were issued by Wai Feng Trading and such payments as Quick Fitting made were wired as directed to the benefit of Wai Feng Trading. QF SUF # 3 ¶¶ 8, 11; WF SUF # 2 ¶ 18. After the switch of other operations to EFF Inc., it is undisputed that Wai Feng Trading continued its existence as a Canadian entity in good standing and continued to maintain financial books and records and a bank account to receive Quick Fitting's payments. QF Ex. # 3 C at 6-7; WF Ex. 1 ¶¶ 5-6.

It is undisputed that, as the entity with the import license, Wai Mao placed orders with EFF Manufactory in China, but it has no claim because it has assigned to Wai Feng Trading any rights it might have had to collect money owed by Quick Fitting for products manufactured by EFF Manufactory. WF Ex. 1 ¶¶ 13-14. Further, Wai Fang Trading has "reimbursed" EFF Manufactory for the products it made and shipped to Quick Fitting. Id. ¶ 18. As a result, EFF Manufactory has admitted that Quick Fitting does not owe it any money. QF SUF # 2 ¶ 80. Rather, the Wai Feng parties relied on Wai Feng Trading to issue the invoices to and receive the payment from Quick Fitting for accounting reasons. Id. ¶ 60 ("This is all accounting, like, matters."). Apart from once questioning why the invoices were not issued by "EFF," QF Ex. # 3 DD at 2, Quick Fitting consistently acquiesced in that course of dealing.

In October 2011, Quick Fitting partially paid a pending Wai Feng Trading invoice, then resumed paying Wai Feng Trading's invoices by wiring funds to an account for the benefit of Wai Feng Trading; the last wire was sent on June 15, 2012. QF SUF # 3 ¶¶ 138-40; WF Ex. 1 ¶ 7 & Ex. B; WF SUF # 2 ¶ 16 & Ex. 10. However, for a set of nine invoices from Wai Feng Trading issued in April through June 2012, based on product manufactured and delivered by EFF Manufactory in reliance on Quick Fitting's purchase orders, Quick Fitting refused to pay. QF SUF # 3 ¶¶ 140-41. It is undisputed that Quick Fitting ordered and accepted delivery of push-fit products from EFF Manufactory for which Wai Feng Trading invoiced it a total of $432,611.47, but for which it did not pay. WF SUF # 1 ¶ 72. It is undisputed that Quick Fitting resold most of this product to its customers. Quick Fitting alleges some of the product for which it refused to pay had to be repaired or cleaned before it could be resold and some had to be redirected for sale in geographic regions that had not yet mandated that all plumbing parts must be lead-free; it claims that a portion (20,669 items) was quarantined because the items were unsalvageable. Id. ¶¶ 70, 71, 73; WF Ex. 1.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and any affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010). The evidence must be in a form that

permits the court to conclude that it will be admissible at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); see also Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 89 (1st Cir. 2018) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.") (alteration omitted).  There are no trial-worthy issues unless there is competent evidence to enable a finding favorable to the nonmoving party.  Goldman v. First Nat'l Bank of Bos., 985 F.2d 1113, 1116 (1st Cir. 1993).  The party seeking summary judgment must make a preliminary showing that no genuine issue of material facts exists.  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

In ruling on a motion for summary judgment, the court must examine the record evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party.  Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5-6 (1st Cir. 2018), review denied, 885 F.3d 52 (1st Cir. 2018).  The court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury . . . or whether it is so one-sided that one party must prevail as a matter of law."  Nortel Networks Inc. v. Foundry Networks, Inc., Civil Action No. 01-CV-10442-DPW, 2003 WL 26476584, at *5 (D. Mass. Mar. 24, 2003) (quoting Paragon Podiatry Lab. v. KLM Labs., 984 F.2d 1182, 1185 (Fed. Cir. 1993)).  The court may not weigh the evidence.  Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994).  However, if the non-movant is the party with the burden of proof and relies on pyramids of inferences upon inferences, summary judgment is appropriate.  See Tyrell v. Dobbs Inv. Co., 337 F.2d 761, 765 (10th Cir. 1964); see also Bendis v. Alexander & Alexander, Inc., 67 F.3d 312 (10th Cir. 1995) (citing Tyrell); Jones v. Bales, 58 F.R.D. 453, 465 (N.D. Ga. 1972), aff'd, 480 F.2d 805 (5th Cir. 1973) (same).

Because these are diversity cases, Rhode Island law provides the substantive rules of decision.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## III.    APPLICABLE LAW AND ANALYSIS

While the briefing on these motions would suggest that they are replete with burning issues of fact and law, when the fires are doused and the smoke clears, what remains are some simple propositions.  First, consistent with the contract limned by the 2010 License/Supply Agreement and the parties' purchase orders and invoices, the Wai Feng parties sold push-fit products that were accepted by Quick Fitting for which they are entitled to be paid.  With no material factual disputes in issue, judgment should enter in favor of Wai Feng Trading on its outstanding invoices, while Quick Fitting's corresponding counter motion should be denied.  Second, in light of its undisputed relinquishment of any potential claim for payment based on transfers to it by Wai Feng Trading, EFF Manufactory's motion for judgment in its favor on the invoices should be denied, and Quick Fitting's corresponding motion should be granted.  Third, because Quick Fitting has proffered legally sufficient evidence of damages resulting from its work to clean and repair certain of the items, its inability to sell some items in regions with stricter lead restrictions and from the alleged "unsalvageability" of a small set of items, its counterclaims for damages should proceed to trial.  The rest is ash that may be consigned to the dust-bin.  Quaker State Oil Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1516 (1st Cir. 1989) (summary judgment enters on claims based, "at most[,] . . . [on] the presence of smoke, not fire").

### A.    Wai Feng Trading's Claims for Breach of Contract

The first of the three motions (ECF No. 180) asks the Court to enter judgment in favor of Wai Feng Trading based on Count I[13] of the Wai Feng parties' Fourth Amended Complaint (ECF No. 80, the operative 13-33 pleading). The Wai Feng parties contend that the undisputed facts establish that Wai Feng Trading is entitled to judgment for $432,611.47, based on Quick Fitting's breach of its contractual obligations as set forth in the 2010 License/Supply Agreement, as arising from the purchase orders and invoices for push-fit product that Quick Fitting accepted and for Wai Feng Trading's book account. These arguments rest on both Rhode Island common law, as well as the Rhode Island UCC. In opposition to the Wai Feng Trading motion, Quick Fitting makes an array of arguments,[14] some of which are the basis for its counter motion for judgment (13-56 ECF No. 259). First, Quick Fitting contends that, although it accepted all and resold most of the products, judgment for the price should not enter because of its claims that the products were defective and non-conforming. Second, it contends that Wai Feng Trading cannot recover for breach of the 2010 License/Supply Agreement because that Agreement was abrogated by the execution of the 2011 Agreements and did not exist at the time of the breach. Third, it argues that Wai Feng Trading lacks standing to recover due to its cessation of business

---

[13] Count I also asserts breach of contract claims on behalf of EFF Manufactory. The motion does not seek summary judgment as to the EFF Manufactory claims in Count I.

[14] Quick Fitting also makes several other arguments that do not require extensive analysis. For example, the equitable defense of unclean hands is a non-starter because the alleged fraud on which it is based arises from Andrew Yung's signing of the 2010 License/Supply Agreement, which named CCWFBV; by the time of the invoices in issue, all taint of that fraud had dissipated in that Quick Fitting was well aware that it was placing orders and being invoiced for manufacturing being done by EFF Manufactory. Kingston Hill Academy v. Chariho Reg'l Sch. Dist., 21 A.3d 264, 270 (R.I. 2011) ("What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts."). Nor does fraud in the inducement based on Andrew Yung's conduct provide a defense to the Wai Feng parties' claim for payment of the price. C. R. Bard, Inc. v. Med. Elecs. Corp., 529 F. Supp. 1382, 1386 (D. Mass. 1982) ("Absent some bad faith by Bard in the sale of the goods itself, MEC lacks a good faith defense under the U.C.C. to Bard's claim for the price."). And Quick Fitting cites nothing to explain why its obligation to pay for the goods it accepted should be voided because the Wai Feng parties initially filed their complaint in Canada in derogation of the venue provision in two of the three Agreements. I find this argument to be without merit and in any event deem it to be waived as undeveloped. See Dunellan, LLC v. Power Test Realty Co., Civil No. 09-cv-211-JNL, 2013 WL 164486, at *21 (D.R.I. Jan. 15, 2013).

operations before it issued the invoices in question. Fourth, Quick Fitting argues that this action should be dismissed because indispensable parties are not joined. And fifth, Quick Fitting points to the "Liquidated Damages/Contract Penalty" clause in the 2011 License Agreement and argues that it voids Quick Fitting's obligation to pay until the penalty has been paid in full; relatedly, Quick Fitting argues that the Wai Feng parties' alleged breach of various restrictive covenants voids the duty to pay.

Taking these points in reverse order, based on the analysis in R+R I, the "Liquidated Damages/Contract Penalty" clause in the 2011 License Agreement is a contract penalty that is unenforceable under Rhode Island common law. Further, as a "term fixing unreasonably large liquidated damages," it is also void as a penalty under the Rhode Island UCC. R.I. Gen. Laws § 6A-2-718(1). Pursuant to the express directive of the 2011 License Agreement, its unenforceability requires that it is "deemed to be severed from the Agreement." WF Ex. 11 ¶ 5.21. Thus, it does not matter whether the contract penalty clause applies to Wai Feng Trading or not – the entire clause is severed and cannot afford Quick Fitting a defense to Wai Feng Trading's claim for payment. The related argument that breach of restrictive covenants in the 2010 License/Supply Agreement (or in the other Agreements) voided the duty to pay the invoices is equally unavailing. See Computer Sys. Eng'g, Inc. v. Qantel Corp., 571 F. Supp. 1379, 1380 (D. Mass. 1983), aff'd, 740 F.2d 59 (1st Cir. 1984) ("buyer should not be allowed to delay payment for goods accepted by asserting" breach of distributorship agreement where seller did not act improperly regarding actual sale or delivery of goods) (citing C.R. Bard, 529 F. Supp. at 1386-88 (alleged breach of distributorship agreement is not defense to contract claim for sale of goods governed by UCC)); Astro-Med, Inc. v. R. Moroz, Ltd., 811 A.2d 1154, 1155-56 (R.I.

2002) (per curiam) (no error in entry of judgment based on failure to pay, despite pending claims of breach of implied covenant of good faith and fair dealing and tortious interference).

Next, Quick Fitting's indispensable party defense[15] to its obligation to pay Wai Feng's invoices founders on Quick Fitting's failure to establish that there is an entity whose joinder is not feasible and whose absence leaves Quick Fitting subject to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," which is required by Fed. R. Civ. P. 19(a)(1)(B)(ii)[16] before the Court may consider dismissal pursuant to Fed. R. Civ. P. 19(b).  See Friends of the E. Lake Sammamish Trail v. City of Sammamish, 361 F. Supp. 2d 1260, 1270 (W.D. Wash. 2005) (if it is infeasible to join necessary party, court must determine whether "in equity and good conscience the action . . . should be dismissed").  The only entity Quick Fitting has identified as filling the bill as indispensable is Wai Mao, which, as the importer, is an entity that conceivably could make a claim for the unpaid invoices.  However, Wai Mao's joinder is far from infeasible – it could easily have been joined in 13-33.  Indeed, it is already a party in 13-56; its nonjoinder in 13-33 is the result of Quick Fitting's choice.  Nor does Wai Mao pose the risk that inconsistent obligations might be imposed on Quick Fitting in light of the averment of Wai Mao's president and owner that it has assigned any interest it might have had to Wai Feng Trading.  WF Ex. 1 ¶ 13.  With no interest, it cannot be indispensable.  See Lang Pharma Nutrition, Inc. v. Aenova Holding Gmbh, C.A. No. 16-371S, 2017 WL 3327572, at *4-5 (D.R.I. Aug. 3, 2017) (subsidiary not indispensable where its parent is joined and is predominant party against which complaint asserts claims).

---

[15] Quick Fitting's indispensable party defense is so undeveloped and vague that the Court might alternatively deem it waived.  See Dunellan, 2013 WL 164486, at *21.

[16] Quick Fitting actually cited Fed. R. Civ. P. 19(a)(1)(A)(ii).  ECF No. 194 at 20 (emphasis added).  Since subpart A does not break into sections (i) and (ii), but subpart B does, the Court assumes the latter was intended.

The undisputed facts also doom Quick Fitting's argument that Wai Feng Trading lacks standing to recover on the unpaid invoices due to its cessation of business operations before it issued the invoices. While other operations may have ceased, Wai Feng Trading has continued in business for the sole purpose of billing and collecting from Quick Fitting, including the prosecution of this litigation; nor does Quick Fitting dispute that Wai Feng Trading is an entity in good standing with the bank accounts and financial records needed to carry out this function. More substantively, during the period in issue, from October 2011 through July 2012, when the relationship ended, Quick Fitting continued to receive invoices from Wai Feng Trading, and continued to wire payments (eighteen separate wires) to the benefit of Wai Feng Trading, for a total of over $500,000. WF SUF # 2 ¶ 16 & Ex. 10. Wai Feng Trading's undisputed ongoing existence as the entity designated by the Wai Feng parties to bill and collect, coupled with the parties' undisputed course of dealing (by which Quick Fitting accepted and paid Wai Feng Trading's invoices based on the delivery of goods manufactured by EFF Manufactory), is more than enough to establish Wai Feng Trading's standing to sue to collect what is owed on its invoices. Kehoe Component Sales Inc. v. Best Lighting Prod., Inc., 933 F. Supp. 2d 974, 1002-03 (S.D. Ohio 2013) (parties' course of performance under Supply Agreement establishes that entity that issued invoices and received payments was proper party to recover); see In re Complaint of Moran Philadelphia, 175 F. Supp. 3d 508, 519 (E.D. Pa. 2016) ("course of dealing may supplement or qualify the terms of the parties' agreement as well as provide interpretive guidance on terms explicit in that agreement"); Providence & Worcester R. Co. v. Sargent & Greenleaf, Inc., 802 F. Supp. 680, 686 (D.R.I. 1992) (under UCC, "course of conduct, dealing, or performance," "by receiving the goods and paying for them without objection over a period of several years" is binding on buyer); Superior Boiler Works, Inc. v. R.J. Sanders, Inc., 711 A.2d

628, 633 (R.I. 1998) ("A contract for sale of goods may be formed in any manner sufficient to show agreement, including conduct of both parties that evidences the existence of such a contract.").

Relatedly, Quick Fitting argues that Wai Feng Trading cannot recover because it relies on a claim of breach of the 2010 License/Supply Agreement and that Agreement was abrogated by the execution of the 2011 Agreements so that it was no longer in existence at the time of the breach. The language of both the 2010 License/Supply Agreement and the 2011 License Agreement belies the viability of this contention. The 2010 License/Supply Agreement has specific termination clauses and an integration clause, which provide that, "[t]his Agreement . . . supersedes all prior understanding relating to [the transactions contemplated herein] whether written or oral." WF Ex. 4 ¶ 9(d). The 2010 Agreement further specifies that, "[n]o amendment or supplement to or waiver of any obligations under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement or admission is sought." Id. ¶ 9(g). By contrast, the 2011 NDA is totally silent regarding its impact on prior agreements. Moreover, Wai Feng Trading is not a party to it; therefore, it cannot stand as a writing that nullified the 2010 License/Supply Agreement. The 2011 License Agreement is even more clear – it expressly addresses what prior agreements are "supersede[d] and replace[d]," providing that "all prior documents titled Non-Disclosure Agreement,[17] executed by the parties" are nullified. When this language is interpreted with the aid of the hoary maxim *expressio unius est exclusio alterius*, the conclusion is confirmed that the 2011 NDA was to be replaced by the 2011 License Agreement, but the 2010 License/Supply Agreement was not. Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 179 (1st Cir. 1995) (when parties list specific item(s) in document,

---

[17] The 2011 NDA, which names the wrong party in a mutual mistake, is so titled.

any item not so listed is excluded). And if the Court were somehow to find ambiguity so that parole evidence may be considered, the testimony from Crompton is consistent with the language of the Agreements. ECF No. 206-5 at 12 ("So the manufacturing arm's name had changed while everything else hadn't. So everything else stayed in place, and we created a new agreement surrounding the new manufacturing name."). Thus, it is clear that the 2010 License/Supply Agreement was not abrogated or replaced by either of the 2011 Agreements and that Wai Feng Trading and Quick Fitting were parties to the 2010 License/Supply Agreement throughout the period in issue.

Finally, and most substantively, Quick Fitting contends that, although it accepted all, and resold most, of the products for which it has refused to pay, judgment for the price should not enter because of its claims that the products were defective and non-conforming. It relies on disputed evidence permitting a reasonable juror to find that some of the push-fit parts that it accepted were mismatched and required fixing; some were dirty and had to be cleaned; others had been ordered lead-free but had lead content that restricted the geographic area in which they could be resold; and some were unsalvageable. According to Quick Fitting, all of this resulted in damages that preclude summary judgment for the price.

Quick Fitting has not marshaled an argument undermining the Wai Feng parties' contention that the principal case for this Court's decisional analysis is Judge Lagueux's decision in Gold Bond, which interprets section 2-607(1) of the UCC and holds that judgment should enter for the price of undisputedly accepted goods, while disputed claims of breach of warranty pursuant to UCC § 2-714 should proceed to trial. 669 F. Supp. at 41-43. In Gold Bond, the Court applied the UCC as adopted in Pennsylvania; however, the analogous UCC provision is also the law in Rhode Island. R.I. Gen. Laws § 6A-2-607. Therefore, Gold Bond's

interpretation is appropriate guidance for this Court's interpretation of the same provision. Qantel, 571 F. Supp. at 1380-81 (appropriate for court to be guided by interpretations of analogous UCC sections under law of other states). In deciding to adopt the approach endorsed by Gold Bond, I rely on the clarity of § 2-607: "[t]he buyer must pay at the contract rate for any goods accepted." R.I. Gen. Laws § 6A-2-607(1) (emphasis added). More importantly, the Rhode Island Supreme Court embraced the Gold Bond approach in Astro-Med, 811 A.2d at 1155-57. Astro-Med affirms the entry of final judgment for breach of contract, book account and unjust enrichment based on the buyer's failure to pay, leaving pending the buyer's claims for tortious interference and breach of the implied covenant of good faith and fair dealing. Id. (buyer must pay "uncontested, unsatisfied debt" where buyer "does not contest its duty to pay [seller] for goods it accepted and enjoyed").

Here it is undisputed that Quick Fitting ordered and accepted the goods, most of which it resold, while the remainder was scrapped or held in quarantine. Quick Fitting also admits that it withheld payment. Under such circumstances, Quick Fitting's claims that the goods were defective and non-conforming and that the Wai Feng parties' conduct damaged its goodwill and caused it to lose profits all remain pending, but they are not a barrier to judgment for the price.

Returning to Wai Feng Trading's arguments: in addition to the breach of contract claims in Count I (based on the 2010 License/Supply Agreement and the unpaid invoices), the motion also asks the Court to enter summary judgment in favor of Wai Feng Trading based on its claim in Count II for its unpaid book account, a common law cause of action recognized in Rhode Island, which is also known as goods sold and delivered. Norlin Music, Inc. v. Keyboard 88 Inc., of Warwick, 425 A.2d 74, 75 (R.I. 1981) (recognizing claim on book account for goods sold and delivered); Boyd Corp. of Cambridge v. Custom Distrib. Corp., 277 A.2d 920, 921 (R.I.

1971) (recognizing viability of action to recover money owed on book account, for goods sold and delivered, and general account). Such a claim may be resolved at the summary judgment phase based on an affidavit proving the amount owed, as long as the amount due on book account is not contested. Sergio Pellari, Inc. v. Retail Fashion Design, Inc., 637 A.2d 781, 781-82 (R.I. 1994). Evidence of the amount due on account based on records of account kept in the regular course of business is competent to prove entitlement to the price. Douglas Furniture Corp. v. Ehrlich, 160 A.2d 362, 364 (R.I. 1960).

Here Wai Feng Trading, through the affidavit of its president and sole owner, has presented its statement of account of moneys owed by Quick Fitting for goods sold and delivered. WF Ex. 1 ¶ 7 & Ex. B. The parties do not dispute that this statement must be reduced by $45,000 to reflect a payment made by Quick Fitting; otherwise, the net amount owed is undisputed, subject to Quick Fitting's argument that the price owed should be offset by its damages based on breach of warranty. Based on the absence of dispute regarding the amount, judgment should enter in favor of Wai Feng Trading on its unpaid account, reduced by the $45,000 payment, leaving the potential offsetting damage claims for further litigation. See Astro-Med, 811 A.2d at 1155-57 (affirming entry of judgment on book account, while buyer's set-off claim remains pending).[18]

Based on the foregoing, I recommend that judgment in the amount of $432,611.47 should enter in favor of Wai Feng Trading on Counts I and II of the Fourth Amended Complaint based on Quick Fitting's breach of its duty in the 2010 License/Supply Agreement to "purchase," on its failure to "pay at the contract rate for any goods accepted" as required by R.I. Gen. Laws § 6A-

---

[18] To be clear, I am not recommending that the Court enter final judgment in favor of Wai Feng Trading, which is what was affirmed in Astro-Med. Whether partial final judgment should enter is a question for another day; at this stage, Wai Feng Trading has not requested it. See Fed. R. Civ. P. 54(b).

2-607(1), and on its failure to pay Wai Feng Trading's net book account.  When judgment enters, I further recommend that prejudgment interest at the Rhode Island statutory rate be imposed from the date each cause of action on each unpaid invoice accrued.  R.I. Gen. Laws § 9-21-10; see Sun Ref. & Mktg. Co. v. FCF Enters., Inc., No. Civ.A. 91-0501, 1995 WL 17017116, at *3 (D.R.I. Jan. 26, 1995); Danforth v. More, 129 A.3d 63, 71 (R.I. 2016) (when contract breached, claim of prejudgment interest appropriately awarded).[19]  Relatedly, I recommend that Quick Fitting's motion asking the Court to enter judgment against Wai Feng Trading be denied.

**B.      EFF Manufactory's Claim Based on Goods Sold and Delivered**

The Wai Feng parties' motion also asks the Court to enter summary judgment in favor of EFF Manufactory with respect to Count II of the Fourth Amended Complaint, which asserts the common law claim of "goods sold and delivered."  Quick Fitting's counter motion asks the Court to enter judgment against EFF Manufactory based on its admission that it has been made whole by payments from Wai Feng Trading.  Unlike the analogous motions respecting the Wai Feng Trading claim, when it comes to EFF Manufactory, Quick Fitting has the better argument.

The undisputed evidence establishes that the Wai Feng parties' inter-company arrangements have left Wai Feng Trading, not EFF Manufactory, as the entity where the loss resides.  EFF Manufactory, Wai Feng Trading and Wai Mao have all admitted that EFF Manufactory is not owed the money for the unpaid invoices.  QF SUF # 2 ¶¶ 81-82.  Accordingly, I also recommend that EFF Manufactory's motion for summary judgment on the

---

[19] By law, prejudgment interest at 12% per year must be added to civil judgments running from the date the cause of action accrued, unless displaced by "any contractual obligation where interest is already provided."  Sun Ref. & Mktg. Co., 1995 WL 17017116, at *3.  In light of Quick Fitting's factual proffer permitting the inference that invoices were sent without the terms on reverse side, based on which the Wai Feng parties withdrew the reverse-side terms, there is no prejudgment interest rate set by contract.  This leaves the statutory rate as the default.

debt owed to Wai Feng Trading be denied,[20] as well as that Quick Fitting's motion for judgment against EFF Manufactory as to the price of the goods sold and delivered ($432,611.47) be granted. Without this relief, Quick Fitting would be at risk of paying the same debt twice.

## C.     Damages for Defective, Non-Conforming and Unmerchantable Goods

The Wai Feng parties ask the Court to enter judgment in their favor based on the insufficiency of Quick Fitting's evidence of damages arising from delivery of defective, non-conforming and unmerchantable goods. 13-56 ECF No. 254.[21] There is no need for the Court to linger over this motion. Fact issues abound. Except for the negligence counterclaim,[22] the motion should be denied. For example, Quick Fitting has flooded the record with pictures and sworn statements and testimony about the mismatched ball valve handles that it had to fix and the oily products that it had to clean. E.g., Crompton Aff. # 1 ¶ 21. Further, Quick Fitting has presented more than enough for a fact finder to determine some of the items were non-conforming with respect to the lead content of the delivered product.[23] And the Wai Feng

---

[20] As noted, this recommendation is based on the need to protect Quick Fitting from paying the judgment for the price twice. If the Court finds that Wai Feng Trading is not entitled to judgment, I do not recommend that judgment should enter against EFF Manufactory, but instead recommend that the Court consider whether judgment should enter in favor of EFF Manufactory for $432,611.47 based on unjust enrichment. As Quick Fitting concedes, "no party is entitled to a windfall." ECF 194 at 22.

[21] This motion also asked the Court to enter judgment in favor of the Wai Feng parties on Quick Fitting's claims of defamation, civil conspiracy, fraud, misappropriation of trade secrets and for injunctive relief. Those issues are addressed in R+R I.

[22] One exception is Count II of the 13-33 counterclaims. It claims negligence but seeks to recover only for economic losses. Because this negligence claim arises in a relationship in which the parties are unambiguously in privity of contract, it runs afoul of the economic loss doctrine. Accordingly, I recommend that judgment enter in favor of the Wai Feng parties on Count II of the 13-33 counterclaims. Gail Frances, Inc. v. Alaska Diesel Elec., Inc., 62 F. Supp. 2d 511, 518 (D.R.I. 1999) (summary judgment enters disposing of negligence claim for delivery of defective products; negligence barred by economic loss doctrine when undisputed facts establish only economic losses and privity of contract between parties); Franklin Grove Corp. v. Drexel, 936 A.2d 1272, 1275 (R.I. 2007) ("economic loss doctrine provides that 'a plaintiff is precluded from recovering purely economic losses in a negligence cause of action'").

[23] Underscoring that this is a trial-worthy issue, the parties spar over what regulatory standards apply and the meaning of their respective lead test results. The Wai Feng parties point to a single email dated December 16, 2011, (WF Ex. 2 ¶ 17 & Ex. 2), and argue that it proves that they were not obliged to deliver any lead-free products. Yet

parties' argument that Quick Fitting waived its right to recover damages because it failed to return the goods is based on a factually disputed record – neither the 2010 License/Supply Agreement nor the Quick Fitting purchase orders, both of which require replacement of non-compliant products, provides that damages are waived by the failure to request replacement. See WF Ex. 4 ¶ 4(c-d); QF Ex. # 3 N.

Consequently, I recommend that the Court partially grant the Wai Feng parties' motion for summary judgment (13-56 ECF No. 254) by dismissing Quick Fitting's negligence claim in Count VI of 13-56 and Count II of its 13-33 counterclaims. Otherwise, I recommend that the Court deny the motion to the extent that it challenges Quick Fitting's defective product claims asserted in Counts V, VII and VIII of the 13-56 complaint and Counts I, III and V of the 13-33 counterclaims. These claims should proceed to trial.

## IV. CONCLUSION

Based on the foregoing, I recommend that the Court grant in part the Wai Feng parties' summary judgment motion (ECF No. 180) on Counts I and II of the 13-33 complaint, resulting in judgment in Wai Feng Trading's favor for the amount of $432,611.47, plus prejudgment interest. Because I recommend granting the motion in Wai Feng Trading's favor, I further recommend denying it as to EFF Manufactory so that Quick Fitting does not pay its debt twice. Contingent on the Court's adoption of these recommendations, I also recommend denying Quick Fitting's corresponding motion for summary judgment (13-56 ECF No. 259) on Counts I and II in the 13-33 complaint as to the claims of Wai Feng Trading, but granting it as to the claims of EFF Manufactory. Finally, I recommend granting in part and denying in part the Wai Feng parties' remaining summary judgment motion (13-56 ECF No. 254); granting it on Quick Fitting's

---

the Quick Fitting purchase orders continued occasionally to request that some items be "lead-free." E.g., QF Ex. # 3 N (exhibit labeled "corrected") (ECF No. 196-1 at 93).

negligence claims in Count VI of its 13-56 complaint and Count II of its 13-33 counterclaims, but denying it as to Quick Fitting's defective product claims alleged in Counts V, VII and VIII of its 13-56 complaint and Counts I, III, and V of its 13-33 counterclaims.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 17, 2018