# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WAI FENG TRADING CO. LTD, and | : | |
| EASTERN FOUNDRY & FITTINGS, INC., | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | C.A. No. 13-33WES |
| | : | |
| QUICK FITTING, INC., | : | |
|     Defendant. | : | |

<u>Consolidated with</u>

| | | |
|---|---|---|
| QUICK FITTING, INC. | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | C.A. No. 13-56WES |
| | : | |
| WAI FENG TRADING CO., LTD., | : | |
| EASTERN FOUNDRY & FITTINGS, INC., | : | |
| EASTERN FOUNDRY AND FITTINGS, LLC, | : | |
| NINGO EFF MANUFACTORY CO, LTD., | : | |
| f/k/a/ NINGO W&F MANUFACTORY CO., LTD., | : | |
| WAI MAO COMPANY, LTD., | : | |
| CIXI CITY WAI FENG BALL VALVE | : | |
| COMPANY, LTD., | : | |
| W&F MANUFACTURING, and | : | |
| CHI YAM "ANDREW" YUNG, | : | |
|     Defendants. | : | |

## MEMORANDUM AND ORDER

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Pending before the Court for determination in these consolidated cases[1] are two motions filed by the Wai Feng parties[2] attacking the expert opinion[3] and subsequent affidavit[4] of Quick Fitting's Vice President of Engineering, Libardo Ochoa. The first motion (ECF No. 182) is focused principally on Ochoa's proposed expert testimony regarding (1) whether products the Wai Feng parties sent to Quick Fitting complied with applicable lead-content requirements and (2) whether the Wai Feng parties provided Quick Fitting's trade secrets to Cixi Welday, which used them to manufacture its own push-fit line. This motion relies on the federal rules of evidence and civil procedure, as well as the minimal prerequisites applicable to expert testimony established in <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993). The second motion (ECF No. 205) requests an order striking Ochoa's subsequently-filed affidavit, which contains averments that are related to his expert opinion. In addition to <u>Daubert</u> and the applicable rules, the second motion relies on the affidavit's alleged untimeliness.

The Court grants in part and denies in part each of the motions. The Court finds that Ochoa's proposed expert testimony regarding whether the products manufactured by EFF Manufactory met Quick Fitting's lead-content specifications is well within his competence and experience as Quick Fitting's lead engineer, as well as that his reliance on certain alleged "hearsay" is consistent with his business practice of using the template of a well-known

---

[1] Unless stated otherwise, citations are to the ECF docket number in 13-33, which is the lead case.

[2] The shortened party names used in this memorandum and order are based on definitions and citation protocols set out in the first of two reports and recommendations that issued in these cases on December 17, 2018, which will be referred to as "R+R I." ECF No. 230 at 1-5 & nn.5, 10. The other report and recommendation is docketed as ECF No. 231 and will be referred as "R+R II."

[3] The pertinent expert disclosure is in the "Restated Rule 26 Expert Disclosures of Quick Fitting, Inc." It may be found in the record, *inter alia*, at ECF No. 205-4. The portion that discloses the Ochoa opinions is at pages 6 to 8. These pages will be cited to as "Ochoa Opin. at ___."

[4] The Ochoa affidavit was filed with Quick Fitting's opposition to the Wai Feng parties' motions for summary judgment, which R+R I and R+R II addressed. It may be found in the record, *inter alia*, at ECF No. 205-8 and will be cited to as "Ochoa Aff. ¶ ___."

certifying agency when performing the lead testing to monitor specification compliance. The Court therefore denies both motions with respect to that opinion.

By contrast, Ochoa's proposed expert opinion that the Wai Feng parties gave Quick Fitting's manufacturing molds and confidential drawings to Cixi Welday, which used them to develop a push-fit product line, is unrelated to his work experience at Quick Fitting; rather, this is testimony for which he has been specially retained to opine based on documents provided to him by counsel, so that a report was required by Fed. R. Civ. P. 26(a)(2)(B), yet no such report was provided. Further, Quick Fitting has presented nothing to establish that the hearsay Ochoa used to form this opinion is of a type "experts in the particular field would reasonably rely on . . . in forming an opinion on the subject," as required by Fed. R. Evid. 703. And these opinions were not fully articulated until Ochoa's affidavit was filed, long after the deadline for disclosing expert opinions, in violation of Fed. R. Civ. P. 26(a)(2)(B-C). Most troublesome, Ochoa did not use reliable facts, data, principles and methods to form this opinion; to the contrary, he piled speculation upon speculation, rather than any scientific, technical or specialized knowledge. See Fed. R. Evid. 702(a). He opined to a hypothesis with no reliable basis for ruling out other equally (or more) likely hypotheses. As to the Cixi Welday proposed opinions, the Court therefore grants both motions, striking paragraphs 7-9 of the affidavit and excluding the fourth paragraph contained in paragraph 1 of the expert opinion. The balance of the relief sought by the motions is denied.[5]

_____

[5] During Ochoa's expert deposition and in the briefing of these motions, Quick Fitting clarified that Ochoa will not testify as an expert as to several matters listed in the expert disclosure. These abandoned opinions include the measures taken by Quick Fitting to protect its trade secrets and the reworking of mismarked products. ECF No. 182-6 at 41; ECF No. 213 at 7. Also, during his deposition, Ochoa eschewed knowledge of the law or specialized expertise in certifying requirements and Quick Fitting's briefs did not attempt to argue that he is somehow qualified to opine on these matters. See ECF No. 182-6 at 22 (does not know what standard was in effect during period when EFF Manufactory making push-fit for Quick Fitting); see also id. at 35-36; ECF No. 213-2 at 23. Based on this apparent abandonment of the proffer of Ochoa as an expert in the law and regulatory environment, it is the Court's understanding that he certainly can testify as a fact witness regarding Quick Fitting's product specifications for lead-

# I. BACKGROUND[6]

## A. Ochoa's Credentials and Work Experience

At least as far as the record presented to the Court tells the tale, Ochoa has not submitted a resume, curriculum vitae or any other document summarizing his "knowledge, skill, experience, training, or education" that Quick Fitting alleges makes him an expert qualified to give his opinions. Fed. R. Evid. 702. What can be gleaned from the record – principally from Ochoa's 2015 deposition as a fact witness – is that Ochoa was hired by Quick Fitting in 2009 as an "entry level mechanical engineer." ECF No. 213-2 at 5. There is no information about his pre-Quick Fitting work experience, education or licenses or what qualified him to be an entry level mechanical engineer; his compensation for work at this position was a modest hourly wage. At some point after he started at Quick Fitting, he received an associate's degree and was promoted to mechanical engineer. Then in 2012 or 2013, he completed his bachelor's degree, became a salaried employee and was made "director of the engineering department." Id. at 5-7; ECF No. 182-6 at 4. The record does not disclose what licenses or certifications he holds, if any.[7] By the time of his disclosure as an expert, he had been promoted again to Quick Fitting's Vice President of Engineering. Ochoa Opin. at 6; Ochoa Aff. ¶ 2.

---

content, including the degree to which those were informed by his understanding of the regulatory environment, but not as an expert in the law, regulations and certifying agency requirements. See Nieves-Villaneuva v. Soto-Rivera, 133 F.3d 92, 99-101 (1st Cir. 1997) (court must exclude expert who seeks to instruct jury on applicable law). To the extent that the Wai Feng parties' motions challenged these abandoned expert opinions, the motions are denied as moot.

[6] The Court assumes the reader's detailed familiarity with the facts set out in R+R I and R+R II. That background will not be repeated.

[7] One exception is that Ochoa testified that he became certified on the Solid Works computer program sometime after 2015 so that he could use it to corroborate his lead-content calculations. ECF No. 182-6 at 11-12. While he had used the program prior, he had a more limited certification. Id. at 12-13.

As far as work experience, during the period beginning when he started in 2009 through to 2012, when the Wai Feng parties/Quick Fitting relationship ended, one of Ochoa's chief responsibilities was to create drawings to establish specifications for Quick Fitting's suppliers. However, during this period, his drawings were not the final version; rather, he submitted his drawings to his superiors who would review and might revise his work. ECF No. 182-3 at 5-6. The superiors decided what drawings should be sent on to the entities manufacturing for Quick Fitting. Id. Ochoa did not participate at all in those communications with suppliers. Id. After 2012, Ochoa assumed responsibility for approving the drawing to be sent to suppliers. Because he arrived at Quick Fitting after the initial design and launch of its lead push-fit product lines was completed, Ochoa has never been involved with the development of a plumbing product from conception to market and was unable to testify regarding the time it takes to launch a product. ECF No. 182-6 at 43-45. However, he was involved in designing improvement to the ProBite product line and, most recently, he has been working on designing and testing prototypes for a new push-fit product. ECF No. 213-3 at 25-32. All of Ochoa's design experience is with Quick Fitting's products; he lacks detailed knowledge of other companies' designs or design development processes. ECF No. 182-6 at 46-47.

Another responsibility that Ochoa appears to have had from when he started at Quick Fitting in 2009 is monitoring whether each shipment of plumbing products delivered to Quick Fitting met the lead specifications that Quick Fitting had set in its order. To do so during the first years that he was on the job, Ochoa sent samples from every order to a third-party laboratory known as Massachusetts Materials Research, Inc. ("MMR"). ECF No. 182-3 at 3.[8] Initially, these MMR results were transmitted to Ochoa's superiors, who compared MMR's numbers to

---

[8] Later, Quick Fitting acquired a spectrometer to do the testing itself. ECF No. 182-3 at 3.

the specifications for lead-content and took action as appropriate. Later, Ochoa became directly

involved with using the MMR data to determine compliance with lead-content specifications; to

do so, he filled in an electronic template maintained by IAPMO,[9] a plumbing certification entity,

and used a computer program called Solid Works. ECF No. 182-6 at 18-19. Ochoa also

communicated directly with suppliers about lead-content, although he did not have such

communications with EFF Manufactory because he was not communicating with suppliers

directly during 2010 through July 2012. Id. at 5; ECF No. 182-3 at 9, 14. According to Ochoa,

the normal practice when the lead-content was higher than the set specifications was to

immediately ask the manufacturer for an explanation and to return the product. ECF No. 182-3

at 8; ECF No. 213-2 at 15. Ochoa normally did not keep copies of the lead analysis, although he

thought the emails he sent regarding the lead testing of EFF Manufactory's shipments would

have been available, but for his computer crashing. ECF No. 182-6 at 20. Ochoa seems to have

had limited knowledge of the lead-limits set by the various states and the federal government.

ECF No. 213-2 at 23 ("I might hear about it, you know."). However, he was copied on emails

written by his superior to EFF Manufactory relating to Quick Fitting's specifications, which

reference various lead standards that have been adopted by industry standard-setting agencies or

IAPMO. ECF No. 203-9 at 5-14.

**B.     Ochoa's Opinions – Expert Disclosures, Expert Testimony and Affidavit**

On October 26, 2016, Quick Fitting produced its first (and timely) expert disclosure

naming Ochoa. ECF No. 205-3 at 4-6. Pursuant to Fed. R. Civ. P. 26(a)(2)(C), Quick Fitting

claimed Ochoa as an employee expert, who it alleged "has not been retained or specially

---

[9] The International Association of Plumbing and Mechanical Officials, Inc. ("IAPMO"), is an entity that certifies plumbing products. See Ochoa Aff ¶ 6. Quick Fitting represents that the National Sanitation Foundation and American National Standards Institute, among others, provide the applicable protocols that are incorporated into the IAPMO program for analyzing lead-content test results. ECF No. 203 at 5-7.

employed to provide expert testimony[.]" Id. at 4. This first disclosure states that Ochoa would testify about Quick Fitting's designs and related features of its push-fit products, including how the design integration enables the product to function as intended, as well as how some products his company received from EFF Manufactory "failed to comply with specifications." Id. at 4-5. There is no mention of Cixi Welday and no articulation of which specifications he would address. In addition, the first disclosure states that Ochoa would provide opinion testimony regarding Quick Fitting's approach to compliance with the evolving law in the United States pertaining to lead-content standards, as well as with the testing and certification requirements implemented by certifying agencies. Id. at 5-6. There is no mention of the lead-content of the product delivered by EFF Manufactory.

Less than a month later, on November 14, 2016, Quick Fitting provided its "[r]estated" disclosure. See Ochoa Opin. at 1. As to Ochoa, it adds several new opinions. These are: first, Ochoa will opine on the "extensive effort . . . required to develop, test, and certify a line of properly functioning push-fit"; second, Ochoa will explain how EFF Manufactory's product "failed to function without substantial re-working"; third, Ochoa will opine regarding "similarities between the line of push-fit plumbing pieces manufactured by [EFF Manufactory] for Quick Fitting, the line of push-fit products discussed between the [Wai Feng parties] and Cixi Welday,[10] and the line of push-fit products that Cixi Welday submitted to IAPMO for certification in 2013"; and fourth, Ochoa will offer his opinion regarding how EFF Manufactory's push-fit "failed to comply with the lead content specifications." Id. at 6-8.[11]

---

[10] On this point – push-fit products discussed between the Wai Feng parties and Cixi Welday – during his deposition, Ochoa conceded that he has no information. ECF No. 182-6 at 60. Presumably, this aspect of his opinion is withdrawn.

[11] The Wai Feng parties apparently accept this restated disclosure as a timely expert disclosure.

The Wai Feng parties deposed Ochoa in his expert capacity on January 27 and February 6, 2017. According to Ochoa's testimony, it was his first time testifying as an expert witness. ECF No. 182-6 at 11. During these depositions, he amplified on his lead-content and Cixi Welday opinions.

As to lead-content, Ochoa produced reports not previously provided, which reflect testing Ochoa had ordered approximately two weeks before his January 27, 2017, deposition. The testing was of EFF Manufactory samples of ball valves and supply stops and done in coordination with MMR; using an IAPMO formula and the Solid Works computer program, Ochoa concluded that the samples exceeded the lead-content limit set out in Quick Fitting's specifications for those items. Id. at 15, 17-19. Ochoa testified that the method used for these tests was the same as what he does in the normal course of business, as previously described in his fact deposition. Id. at 2. His explanation for why Quick Fitting had not retained any of the actual testing documents that were generated in 2012 (based on which Quick Fitting accepted the product but refused to pay) was that it was not his practice to maintain them and because of a subsequent computer crash. Id. at 20 ("My computer crashed like several times[.]"); see id. at 6, 13-14, 50.

As to Cixi Welday, Ochoa testified that Quick Fitting's counsel had supplied him with an unauthenticated document produced by IAPMO [12] in response to a subpoena for documents – a

---

[12] Quick Fitting noticed the deposition of IAPMO in 2015, but for reasons that the record does not disclose, never took the deposition. ECF No. 203-2. Instead, IAPMO produced some documents, among which were found the so-called Intertek report and the drawing of the "Push-Elbow" described in the text. Otherwise, Quick Fitting abandoned the effort to take its deposition until after the close of fact discovery, and used it as a reason to extend yet again the fact discovery period in the case. The Court denied that request based on Quick Fitting's inability to explain why it had not bothered to try to schedule the IAPMO deposition during fact discovery, as well as that Quick Fitting was unable to explain why the deposition was important, particularly where it seemed unlikely that IAPMO could authenticate documents prepared by other unrelated entities that happened to be found in its files. However, the Court did not preclude Quick Fitting from using such documents, should Quick Fitting find a way to authenticate them. See Wai Feng Trading Co. Ltd v. Quick Fitting, Inc., C.A. No. 13-33S, 2016 WL 4184014, at *4-5 (D.R.I. June 14, 2016). Also during the lengthy fact discovery period in this case, there is no suggestion that Quick Fitting

report purporting to have been prepared on March 5, 2014, by an entity named "Intertek" for its "client," identified as Cixi Welday.  ECF No. 203-6 at 1; see ECF No. 182-6 at 9.  It describes testing performed by Intertek[13] at its laboratory in Guangzhou, China.  ECF No. 203-6 at 1.  Among the attachments is a grainy photograph of plumbing products.  Id. at 12.  Using a ruler, Ochoa compared the exterior dimensions of a Quick Fitting item manufactured by EFF Manufactory to what he could divine from the photograph; based on what he could discern of the exterior dimensions, he testified, "that fitting was made from the same forging mold.  Both fittings are identical."  ECF No. 182-6 at 34.  However, he conceded that the exterior dimensions of the item had long been a standard used by all of Quick Fitting's suppliers, as well as that they can potentially be ascertained from buying a product off the shelf.  Id. at 34-35, 55.  He testified that he thought several other items in the Intertek report appeared to have "similarities" to the Quick Fitting push-fit product line.  Id. at 55.

Also from the IAPMO production, labeled "[f]or evaluation only," Ochoa was given by counsel a drawing of a "1/2 [inch] Push 3/4 [inch] Push Elbow," with text partly in Chinese and partly in English, Cixi Welday's name displayed in one box and the date "2013-12-20" in five boxes.[14]  ECF No. 189-3 at 75 (hereinafter, "Push-Elbow drawing").  Ochoa testified that, "[w]hen I see this document, . . . I knew that design was made from our drawings because I made that mistake," referring to a design error he recalled making in 2009.  ECF No. 182-6 at 23.  However, cross examination revealed that the drawing Ochoa presented as a comparator,

---

ever tried to get discovery directly from Cixi Welday, despite the presence of its owner in the United States at trade shows.

[13] Ochoa has never dealt with Intertek and merely assumed it to be "a lab that certifies product."  ECF No. 182-6 at 10.

[14] Ochoa conceded that he could not explain what this document really is because the dates are inconsistent with a certification application.  ECF No. 182-6 at 61.

purporting to show his 2009 error, was actually "a document [he] just created [him]self." Id. at

26-27. Further, while Ochoa testified that he searched on Google to determine whether the error

he saw in the drawing produced by IAPMO was actually a standard design routinely used by

other plumbing-parts designers, he could not recall any of what he looked at. Id. at 28-29.

Ochoa also testified that he made the error in 2009, at a time when his drawings were submitted

to his Quick Fitting superiors for possible revision, not to suppliers. He was unable to say

whether his "error" drawing was ever sent to any of Quick Fitting's suppliers, if so which ones,

and whether it was ever withdrawn or canceled by a communication to those that had received it.

Id. at 29-31. He was unable to testify that the 2009 "error" drawing had ever gone to any of the

Wai Fang parties. Ochoa also conceded that he has never seen or touched a push-fit plumbing

product that had been sold by Cixi Welday. Id. at 57.

The last leg of Ochoa's opinions – his affidavit – was filed on January 16, 2018, as part

of Quick Fitting's opposition to the Wai Feng parties' motions for summary judgment.[15] See

Ochoa Aff. As to the lead opinion, it simply recaps, with somewhat more clarity, his testimony

from a year before; copies of the MMR reports and the IAPMO spreadsheet that he used are

attached. Ochoa Aff. ¶ 4-6, Tabs 1-2. As to Cixi Welday, the affidavit takes the opinion far

beyond what was in the expert disclosure, which states he would opine to "similarities," and

somewhat further than what he stated in his deposition. In the affidavit, Ochoa's opinion is

unequivocal: "the Welday piece was manufactured utilizing the same mold as used to

manufacture Quick Fitting's product using the same dimensional drawings[,]" and that

"[another] Welday piece was manufactured utilizing the same drawings that contained my

original error [from 2009]." Ochoa Aff. ¶¶ 8-9.

---

[15] By the time of the filing of the affidavit, the Wai Feng parties' motion to exclude Ochoa's expert testimony, which focuses on the expert disclosure and his expert testimony, had been pending for almost two months.

## C.        Motions to Strike and Exclude

The Ochoa opinions support two aspects of Quick Fitting's claims and defenses against the Wai Feng parties.  First, Quick Fitting defends its decision to accept but not pay for the push-fit product delivered by EFF Manufactory with its allegation that the products it received were out of compliance with the specifications in the purchase order, particularly for lead-content. And second, Quick Fitting asserts that the Wai Feng parties breached certain restrictive covenants barring them from using any of Quick Fitting's trade secrets or other information or materials (such as Quick Fitting-supplied manufacturing molds) to manufacture and sell push-fit products to any entity other than Quick Fitting, or from disclosing Quick Fitting's trade secrets to any third party.  Ochoa's proposed expert testimony is central to these claims and defenses.

The first of the two motions (ECF No. 182) is the Wai Feng parties' motion to exclude Ochoa as an expert witness.  It features five arguments, three of which are worthy of serious consideration.[16]  First, the Wai Feng parties argue that Ochoa is a "retained or specially employed" expert, (ECF No. 182-1 at 14), who should have provided an expert report as required by Fed. R. Civ. P. 26(a)(2)(B).  Second, they contend that noncompliance with the reliability standard for a Fed. R. Evid. 702 expert dooms Ochoa's opinions.  And third, they point to the inadmissible hearsay on which Ochoa's testimony is based and argue that it transgresses Fed. R.

---

[16] The argument that Ochoa's testimony is inconsistent both with the testimony of Quick Fitting's chief executive officer, David Crompton, as well as with Ochoa's own testimony as a fact witness, does not merit further discussion. The matters of which the Wai Feng parties complain are hotly disputed interpretations of testimony, which certainly may be fodder for impeachment but do not constitute reasons to strike Ochoa's expert opinion.  Ramos-Matos v. United States, Civil No. 11-1522(MEL), 2012 WL 5897260, at *1 (D.P.R. Nov. 21, 2012) ("If the contradictory facts are at issue in a case, then the expert testimony, if otherwise admissible, may be presented to the factfinder."); see also Martinez-Morales v. Victaulic Co., Civil No. 11-1660(MEL), 2013 WL 2443871, at *3 (D.P.R. June 5, 2013) (same); see also FNB Bank v. Park Nat'l Corp., 996 F. Supp. 2d 1187, 1190 (S.D. Ala. 2014) (denying a motion to exclude because the expert's opinions were not contrary to "indisputable" facts).  Similarly, the argument that the Ochoa opinions circumvent the Court's decision closing fact discovery is a non-starter.  In Wai Feng Trading, 2016 WL 4184014, the Court held only that "Quick Fitting's argument that it should be allowed to take the IAPMO deposition is insufficient cause to justify the reopening of fact discovery."  Id. at *5.  There is nothing in that decision undermining the viability of the Ochoa opinion.

Evid. 703's mandate that an expert may rely on inadmissible evidence only to the degree that experts in the particular field would so rely.

The second motion (ECF No. 205) – Wai Feng parties' motion to strike Ochoa's affidavit – was filed after Ochoa's affidavit was added to the record. Focused only on the affidavit, it advances similar substantive arguments to those raised in the first motion, including noncompliance with Fed. R. Civ. P. 26(a)(2)(B)'s written report requirement, reliance on hearsay without a proper foundation and the failure to meet the reliability standard in Fed. R. Evid. 702/Daubert. The second motion adds a challenge to the affidavit as encompassing opinions that are well beyond the scope of Ochoa's expert disclosure. It also includes arguments that do not merit further consideration, such as that the affidavit was untimely.[17]

## II.    APPLICABLE LAW

### A.    Compliance with Rule 26(a)(2)

Rule 26(a)(2)(B) splits experts into two varieties – those "retained or specially employed" to provide expert testimony, who must provide a detailed written report at the time of the expert disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(B), and those who may provide the truncated disclosure set out in Fed. R. Civ. P. 26(a)(2)(C). As described in Downey v. Bob's Disc. Furniture Holdings, Inc., 633 F.3d 1 (1st Cir. 2011), if the expert was directly involved in the ongoing sequence of events, his opinion testimony is not that of a retained or specially employed expert, but if he comes to the case as a stranger and draws the opinion from the facts supplied by others, he should be viewed as retained or specially employed. Id. at 6-7. "[I]n some cases an

---

[17] The Wai Feng parties contend that the filing of the Ochoa affidavit violated the Court's deadlines for the summary judgment motions. ECF No. 205-1 at 8-10. This argument is rejected – the affidavit was included with Quick Fitting's opposition to five summary judgment motions, which is perfectly permissible under the Fed. R. Civ. P. 56(c) (setting out procedure for summary judgment). What Quick Fitting may not do is introduce a new expert opinion in an affidavit filed well after the expert disclosure deadline. Whether it has done so is addressed *infra*.

on-the-scene expert whose views are not subject to the written report requirement of Rule 26(a)(2)(B) might also be retained or specially employed to develop *additional* opinions for purposes of trial (and would, to that extent, trigger the written report requirement)." Id. at 8, n.5 (emphasis in original).  To determine whether testimony "falls outside the compass of Rule 26(a)(2)(B)[,]" id. at 6, the Court may separate the testimony, finding some parts require a written report and others do not.  See Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc., Civil Action No. 07-8446, 2009 WL 981724, at *6 (E.D. La. Apr. 9, 2009) (applying this approach for experts with "hybrid fact-opinion testimony" and "opinions that they may have developed in preparation for the litigation"); see also Doctors Licensure Grp., Inc. v. Cont'l Cas. Co., Case No.: 3:10-cv-98-RV/MD, 2011 WL 13182969, at *6-7 (N.D. Fla. Sept. 26, 2011) (citing Beechgrove).

At bottom, opinions beyond those formed during the events in issue must be excluded under Rule 26(a)(2)(B) "unless [the party] provided . . . an expert report stating them and containing the other information required by [the Rule]."  Westerdahl v. Williams, 276 F.R.D. 405, 409 (D.N.H. 2011) (where treating medical expert anticipated testifying to opinions about injuries formed after he stopped treating, opinion excluded based failure to provide report); see Beane v. Util. Trailer Mfg. Co., No. 2:10 CV 781, 2013 WL 1344763, at *3 (W.D. La. Feb. 25, 2013) ("There is no evidence that these experts have any firsthand knowledge on UTM's trailer design or Beane's specific side underride accident, and thus any comparisons the experts might make between their companies' trailer and UTM's trailer must arise by examining the relevant information from this case, indicating that they were specifically recruited after-the-fact just to provide expert testimony.").  On the other hand, that the proposed expert has never been retained as an expert witness before is a factor that may support a finding the written report requirement

is not applicable.  See Saucedo v. Gardner, Civil No. 17-cv-183-LM, 2018 WL 1175066, at *1-2 (D.N.H. Mar. 5, 2018); Southard v. State Farm Fire & Cas. Co., No. 4:11-CV-243, 2013 WL 209224, at *3 (S.D. Ga. Jan. 17, 2013).

The court may exclude an expert opinion based on the proponent's failure to comply with the Fed. R. Civ. P. 26(a)(2) expert disclosure requirement, unless the failure is shown to have been substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1); Harriman v. Hancock Cty., 627 F.3d 22, 30 (1st Cir. 2010) ("the baseline rule is that the required sanction in the ordinary case is mandatory preclusion" of late or non-disclosed information); see Providence Piers, LLC v. SMM New England, Inc., C.A. No. 12-532 S, 2014 WL 5775663, at *3 (D.R.I. Nov. 6, 2014).  The failure is not cured by the post-disclosure opportunity to depose the expert; that simply shifts the burden of compliance to the opposing party.  Providence Piers, 2014 WL 5775663, at *3. Similarly, the Advisory Committee Note to the 1993 Amendment to Rule 37(c)(1) narrows the meaning of harmlessness in this setting, making clear that it is "fairly limited" to such errors as the inadvertent omission of a name already known to all parties.  Id. at *4.  However, "preclusion 'is not a strictly mechanical exercise,' and th[e] Court has discretion to choose a less severe sanction."  Id. (quoting Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011)).  When a witness who was not designated to speak as an expert nevertheless is proposed (out-of-time) to present an opinion, and the delay is not "justifi[ed]" by the explanation, a court may exclude the proffered evidence.  Samaan v. St. Joseph Hosp., 670 F.3d 21, 35-38 (1st Cir. 2012) (Daubert-exclusion of the prior proposed expert not justification).  Courts balance "an array of factors" in determining whether to impose the baseline rule of exclusion, including "the sanctioned party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district

court's docket; and the sanctioned party's need for the precluded evidence." Harriman, 627 F.3d at 30; Westerdahl, 276 F.R.D. at 410.

## B. Compliance with Fed. R. Evid. 702/Daubert[18]

Failure to satisfy the reliability standards of Fed. R. Evid. 702/Daubert[19] is an independent reason why an expert opinion may be excluded. Samaan, 670 F.3d at 31-32. As Daubert teaches, the court must examine two metrics to determine whether an opinion may be admitted. 509 U.S. at 597. First, there must be a reliable foundation for the opinion, which necessitates an inquiry into the expert's methodology and the basis for his conclusions. Second, there must be an adequate fit between the expert's methods and his conclusions. Id. at 591. This second prong addresses the problem that arises when an expert's methods, though impeccable, yield results that bear a dubious relationship to the questions on which he proposes to opine. See id. at 591-92; Samaan, 670 F.3d at 31-32. "If perscrutation reveals 'that there is simply too great an analytical gap between the data and the opinion proffered,' the expert's testimony should be excluded." Samaan, 670 F.3d at 32. A trial court has broad discretion to admit or exclude based on its determination as to the reliability and relevance of the proffered expert testimony. Morris v. R.I. Hosp., C.A. No. 13-304-ML, 2014 WL 3107296, at *5 (D.R.I. July 7, 2014). Only if the

---

[18] To make the Daubert determination, courts often conduct a so-called Daubert hearing at which the putative expert, and counter experts may testify. See, e.g., Bado-Santana v. Ford Motor Co., 364 F. Supp. 2d 79, 86 (D.P.R. 2005) (discussing whether hearing is necessary). Neither party requested a Daubert hearing in connection with these motions. In any event, based on its review of the parties' submissions and arguments, the Court finds that no hearing was necessary.

[19] Rule 702, which codified the reliability standard set by Daubert, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

trial court deems the expert's methodology reliable is the expert allowed to testify as to the inferences and conclusions he draws from it.  United States v. Mooney, 315 F.3d 54, 63 (1st Cir. 2002).

Rule 702/Daubert requires the Court to act as gatekeeper to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."  Beacon Mut. Ins. Co. v. Onebeacon Ins. Grp., 253 F. Supp. 2d 221, 222 (D.R.I. 2003) (citing Daubert, 509 U.S. 579; Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)); see Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 114 (1st Cir. 2010).  These standards apply "to all experts, not just to 'scientific' ones."  Kumho Tire, 526 U.S. at 149 (applying Daubert to engineering expert).  Experts tie observations to conclusions through the use of "general truths derived from . . . specialized experience."  Id. at 148-49 (quoting L. Hand, Historical and Practical Considerations Regarding Expert Testimony, 15 HARV. L. REV. 40, 54 (1901)).  Whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the testimony will rest "upon an experience confessedly foreign in kind to [the jury's] own."  Id. at 149.  "The judge's task . . . is to ensure that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 57 (1st Cir. 2010).

To decide whether an expert's opinion is admissible, the court's inquiry must be "a flexible one," examining "the methodology employed, not on the expert's conclusions."  IDC Props., Inc. v. Chicago Title Ins. Co., C.A. No. 09-632-JJM, 2017 WL 5151347, at *2 (D.R.I. Nov. 3, 2017).  "Daubert neither requires nor empowers trial courts to determine which of

several competing scientific theories has the best provenance." <u>Ruiz-Troche v. Pepsi-Cola of P.R. Bottling Co.</u>, 161 F.3d 77, 85 (1st Cir. 1998). "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." <u>Id.</u> (quoting <u>Daubert</u>, 509 U.S. at 590). "The party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance." <u>Milward v. Rust-Oleum Corp.</u>, 820 F.3d 469, 473 (1st Cir. 2016) (analyzing a <u>Daubert</u> challenge). However, an expert opinion is not admissible when it is connected to existing data only by the *ipse dixit* of the expert. <u>Bowling v. Hasbro, Inc.</u>, C.A. No. 05-229S, 2008 WL 717741, at *4 (D.R.I. Mar. 17, 2008).

Part of the Court's gatekeeping role in assessing whether the particular opinion is relevant and reliable is to consider the proposed expert's credentials. The party proposing the expert bears the burden of supplying that information. The court may strike an expert due to the proponent's failure to provide a curriculum vitae or any other documentation identifying the expert's qualifications, education and experience. <u>Stone v. Simone</u>, Civil No. 13-CV-126-S, 2014 WL 11353425, at *3 (D. Wyo. June 2, 2014); <u>see</u> <u>First Sav. Bank, F.S.B., v. U.S. Bancorp</u>, 117 F. Supp. 2d 1078, 1086 (D. Kan. 2000) ("[n]o resume, curriculum vitae, or other indicia of his qualifications have been provided to this court," so that no basis for testimony shown, and opinion based on speculation; expert's testimony held inadmissible).

C. **Expert Reliance on Hearsay**

"An expert's testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced." <u>Jones ex rel. U.S. v. Mass. Gen. Hosp.</u>, 780 F.3d 479, 494 (1st Cir. 2015); <u>see</u> <u>United States v. Kantengwa</u>, 781 F.3d 545, 561 (1st Cir. 2015) ("[A] party cannot call an

expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.") (quoting Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136 (2d Cir. 2013)).  While an expert may rely on hearsay evidence, he may do so only if he "form[s] his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials.'"  Trustees of Boston Univ. v. Everlight Elecs. Co., 141 F. Supp. 3d 147, 148-49 (D. Mass. 2015) (quoting United States v. Mejia, 545 F.3d 179, 197 (2d Cir. 2008)). "'[E]xpert opinions based on otherwise inadmissible hearsay' may be admitted if the underlying 'facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"  See Bartlett v. Mut. Pharm. Co., 742 F. Supp. 2d 182, 191 (D.N.H. 2010) (quoting Daubert, 509 U.S. at 595).

These principles are codified in Fed. R. Evid. 703, which provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The burden of demonstrating that the hearsay is information "of a type reasonably relied upon by experts in the field" rests firmly on the proponent of the opinion.  CoxCom, Inc. v. Chaffee, No. CIVA 05-107S, 2006 WL 1793184, at *9 (D.R.I. June 26, 2006).  When an opinion depends in large part on hearsay, and the Fed. R. Evid. 703 foundation has not been laid, the court should exclude the opinion.  Id.

## III.   ANALYSIS

### A.   Ochoa's Lead-Content Opinions

The Court finds that Ochoa's testimony on the lead-content of products received from the Wai Feng parties qualifies as an employee expert opinion that is not subject to the written report requirement of Rule 26(a)(2)(B).  Until now, Ochoa has never testified in litigation as an expert witness.  ECF No. 182-6 at 11.  While there is no question that Ochoa performed the lead-content calculations in question during the weeks leading up to his expert depositions, it is also clear that these calculations are based on a methodology that he has used consistently over the years to conduct such analyses of every shipment of plumbing parts that Quick Fitting receives. It is true that, during the period of the Wai Feng parties/Quick Fitting relationship (2010 to 2012), Ochoa's role in performing these calculations was limited, but he clearly was somewhat involved in that he testified he recalled reporting lead-content problems to his manager regarding the Wai Feng parties' products.[20]  Id. at 6.

Based on the foregoing, the Court further finds Quick Fitting has established that Ochoa's experience in testing plumbing parts for lead-content was "part of the ongoing sequence of events" giving rise to his opinions as a mechanical engineer.  Downey, 633 F.3d at 7.  Therefore, Ochoa's opinions are "consistent with the unique role that an expert who is actually involved in the events giving rise to the litigation plays in the development of the factual underpinnings of a case."  Id.  As a result, the Court finds that Fed. R. Civ. P. 26(a)(2)(B) does not require a written report for the lead-content opinion.

---

[20] A problem for Quick Fitting that is beyond the scope of this memorandum and order is whether there should be consequences for its apparent failure to retain the documents regarding lead-testing on which it relied in deciding to stop paying for goods it accepted.

The Court also finds that Fed. R. Evid. 702/<u>Daubert</u> does not mandate excluding Ochoa's lead-content opinion. Focusing on "the methodology employed," <u>IDC Props.</u>, 2017 WL 5151347, at *2, Quick Fitting has established that Ochoa's lead calculations – both for his opinion and as performed in the course of his work as a Quick Fitting mechanical engineer – relied on IAPMO templates, which are based on reliable, standardized protocols set by the National Sanitation Foundation and American National Standards Institute. ECF No. 182-6 at 2-7, 19-20; ECF No. 203 at 5-7. In applying these procedures, Ochoa used the specialized knowledge he developed since 2009 working as a mechanical engineer at Quick Fitting. As long as Quick Fitting can link Ochoa's lead-content conclusion regarding the items he tested to the specifications set for those items when they were ordered, this testimony will assist the fact-finder in assessing whether the Wai Feng parties fully complied with their contractual obligations in their delivery of push-fit pieces to Quick Fitting. Keeping in mind the Court's "gatekeeper" role, <u>Pages-Ramirez</u>, 605 F.3d at 113, the Court finds this testimony "rests upon good grounds, based on what is known," so "it should be tested by the adversary process[.]" <u>Ruiz-Troche</u>, 161 F.3d at 85 (citing <u>Daubert</u>, 509 U.S. at 590).

Finally, the Court finds that Ochoa's lead-related opinions do not transgress the requirements of Fed. R. Evid. 703. There is no doubt that Ochoa relied on a spreadsheet IAPMO developed for determining the lead-content of plumbing product, which appears to incorporate certification standards and thereby potentially constitutes inadmissible hearsay. However, Ochoa's deposition establishes these IAPMO templates (into which Ochoa input MMR data to produce his own calculation) are what Ochoa himself reasonably relied on for years in his capacity as Quick Fitting's mechanical engineer forming opinions on whether plumbing parts' lead-content exceeded specifications. ECF No. 182-6 at 2-7, 19-20; <u>see</u> ECF No. 203 at 7; ECF

No. 203-5. Pursuant to Fed. R. Evid. 703, it is clear that these templates need not be admissible

for the opinion to be admitted. Thus, to the extent that Ochoa relied in part on otherwise

inadmissible hearsay, such use is consistent with Rule 703 because he "form[ed] his own

opinions by applying his extensive experience and a reliable methodology to the inadmissible

materials." See Everlight, 141 F. Supp. 3d at 148-49.

> **B.     Opinions Regarding Cixi Welday Misappropriation of Quick Fitting's Design and Mold**

Ochoa's opinions and conclusions based on observed similarities between a supposed

Cixi Welday product and Quick Fitting technology are an entirely different matter from his lead-

content opinion.

For starters, there is nothing in the record to buttress Quick Fitting's contention that this

opinion did not require a written report under Fed. R. Civ. P. 26(a)(2)(B). To the contrary,

Ochoa's comparison between push-fit designs of different manufacturers bears no relationship to

anything that he described doing as part of his work as Quick Fitting's mechanical engineer.

Indeed, he testified that he knew little or nothing about the design process of other push-fit

manufacturers. ECF No. 182-6 at 47 ("I never work for other company."). Further, the Intertek

report and the Push-Elbow drawing produced by IAPMO, which are central to these opinions,

were provided to Ochoa by Quick Fitting's counsel long after this litigation commenced. Id. at

9-10, 16, 33. Neither of these documents relate at all to Ochoa's work for Quick Fitting – he

admitted he knew nothing of Intertek and could not understand the significance of the Push-

Elbow drawing. And he made his visual comparison of what is depicted in these documents with

Quick Fitting's push-fit products for the first time a few months before January 2017. Id.

Ochoa's conclusion derived from comparing product designs relates neither to

"contemporaneous [ ] records" nor determinations he reached as part of his day-to-day

employment at Quick Fitting.  See Westerdahl, 276 F.R.D. at 409.  Rather, he is an "expert [who] comes to [this issue in] the case as a stranger and draws the opinion from facts supplied by others[,]" namely the attorneys for Quick Fitting.  Downey, 633 F.3d at 7.

Based on the foregoing, as to the Cixi Welday opinion, the Court finds that Ochoa is a "retained or specially employed" expert witness and therefore subject to Rule 26(a)(2)(B)'s written report requirement.  That means that Quick Fitting's failure to provide a written report permits the Court, in its discretion, to order that the opinion be stricken, unless the failure is substantially justified or harmless.  Yet Quick Fitting makes no effort to present anything that might amount to a justification; further, the harm arising from this failure is clear – with no written report, the Wai Feng parties did not come to understand the scope of Ochoa's opinion until well after their deadline to designate a rebuttal expert had passed.

As to the exercise of discretion, weighing the factors set out in Westerdahl, 276 F.R.D. at 409, and Harriman, 627 F.3d at 29-30, the Court finds that, based on the extremely protracted "history of the litigation[,]" "the required sanction . . . is mandatory preclusion[.]"  Id.  Permitting Quick Fitting to submit a late written report would further congest the Court's docket and add to this case's tangled array of filings.[21]  Further, while Quick Fitting may have some need for this evidence, exclusion of Ochoa's Cixi Welday opinion is far from being "tantamount to dismissal[.]"[22]  See id. at 32.  Mindful of these issues, together with other deficits tainting the

---

[21] Its excessive filings prompted several motions to strike from the Wai Feng parties.  See ECF No. 232.  Although the Court denied those motions, the Court criticized Quick Fitting's litigation tactics.  See id.

[22] In addition, the Court must consider Quick Fitting's lack of diligence in using traditional discovery tools to explore whether Cixi Welday was trying to launch a push-fit product line manufactured using Quick Folding's confidential information.  See n.12 supra.  Also pertinent is the 2015 testimony of Quick Fitting's Crompton, that, despite its suspicions, Quick Fitting would not be able to determine whether its trade secrets were being used by Cixi Welday to market a line of push-fit products without "hav[ing] samples of the products."  WF Ex. 17 at 15-16.

Ochoa Cixi Welday opinion (discussed *infra*), the Court exercises its discretion to exclude the opinion based on Quick Fitting's failure to comply with Fed. R. Civ. P. 26(a)(2)(B).

The Fed. R. Evid. 702/<u>Daubert</u> analysis leads to the same result.

The first serious <u>Daubert</u>-related flaw with the Ochoa Cixi Welday opinion is that it rests not on facts but instead almost entirely on Ochoa's speculation. For example, the Push-Elbow drawing opinion depends on the following chain of speculation: that Ochoa's 2009 drawing error (as to which he could testify only that it was submitted to his superiors for review and revision) was approved by them (despite the error) to be sent to Quick Fitting's manufacturers in 2009; the drawing was not withdrawn, but continued to be sent to manufacturers into 2010 and 2011, so that it was sent to the Wai Feng parties; the Wai Feng parties gave it to Cixi Welday, which used it to make a drawing four years after the original error. Similarly, the Intertek report opinion rests on the implausible speculation that there is no standardization of exterior dimensions among push-fit products so that it is reliable to hypothesize that when two items have similar exterior dimensions, Quick Fitting's manufacturing mold must have been used to manufacture both. Compounding the problem is that the two foundational documents are both inadmissible hearsay,[23] and that Quick Fitting has failed to establish that an expert in "the particular field would reasonably rely on those kind of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Nor has Quick Fitting sustained its burden of establishing that Ochoa has the credentials that would qualify him to make such a definitive comparison in reliance on such a foundation.

---

[23] Both the Intertek report and the Push-Elbow drawing contain hearsay in that no declarant has testified either to authenticity or meaning. Fed. R. Evid. 801. The fact that IAPMO produced them in response to a subpoena does not convert them into its business records. Fed. R. Civ. 803(6). Further, they lack sufficient indicia of reliability to trigger admissibility under the residual exception to the hearsay rule in Fed. R. Evid. 807. Ochoa was unable to explain anything regarding what Intertek's business might be and was puzzled by the Push-Elbow drawing, particularly the writing in Chinese. With no corroboration that Cixi Welday has ever actually sold any push-fit product, it would be highly prejudicial to admit these ambiguous documents.

Ochoa's methodology also fails to pass the <u>Daubert</u> gatekeeping stage. For example, to compare the products in the grainy photographs of the Intertek report with a Quick Fit product, Ochoa's method involved measuring with a ruler. As to the design error, his method was to recreate what he apparently remembered of his 2009 error and to compare that to a drawing given to him by counsel. Further, to confirm his hypothesis about the design error, he considered whether the same error was replicated by other manufacturers – and the method used was looking at the designs of "[m]any brands" "several times in the last [ ] year" and "also online searching and Google," although he was unable to say what this research revealed. ECF No. 182-6 at 28-29. "Exactly what is involved in 'reliability' . . . must be tied to the facts of a particular case." <u>Packgen v. Berry Plastics Corp.</u>, 847 F.3d 80, 85 (1st Cir. 2017). On this case's facts, confirming that Cixi Welday's product design includes the precise error Ochoa made years ago is not reliably done through Ochoa's methods, especially browsing the internet and looking at designs of "[m]any brands[.]" ECF No. 182-6 at 28-29.

In light of these deficits, the Court finds Quick Fitting has failed to show that Ochoa's Cixi Welday opinion "will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). Rather, this is evidence that does not have a tendency "to make a fact more or less probable[,]" Fed. R. Evid. 401(a), because it is rooted in guesswork. Admitting it would confuse the jury and create a trial within a trial on the true origin and meaning of Intertek and the Push-Elbow drawing. <u>See</u> Fed. R. Evid. 403. Because it is so speculative, this evidence does not "rest[ ] on a reliable foundation" and is not "relevant to the task at hand." <u>Cruz-Vazquez</u>, 613 F.3d at 57.

Based on the foregoing, and mindful of the Court's obligation to "be vigilant in exercising its gatekeeper role because of the latitude given to expert witnesses to express their

opinions on matters about which they have no firsthand knowledge and because an expert's testimony may be given substantial weight by the jury due to the expert's status," Koninklijke Philips N.V. v. Zoll Med. Corp., 256 F. Supp. 3d 50, 52 (D. Mass. 2017), the Court finds that Quick Fitting, the party with the burden, has failed to demonstrate that Ochoa's Cixi Welday opinions meet the standard in Fed. R. Evid. 702/Daubert. Accordingly, the opinion is excluded.

### C. Opinions in Affidavit Exceed Scope of Opinion Summary in Expert Disclosure

The Wai Feng parties argue that Ochoa's affidavit purports to offer expert opinions on topics that go beyond what was set out in his expert disclosure; to that degree, they ask the Court to strike them. If such an argument is well founded, and the failure is neither substantially justified nor harmless, whether striking the opinion is the right remedy is a matter for the court's discretion. See Providence Piers, 2014 WL 5775663, at *3-5 (forging remedy short of striking expert based in inadequacy of expert disclosure).

As to the already-stricken Cixi Welday opinion, this argument is well founded. Ochoa's expert disclosure revealed only the vague conclusion that there are "similarities" between Quick Fitting push-fit and the push-fit product line ostensibly submitted by Cixi Welday to IAPMO for certification in 2013. By contrast, the opinions in his affidavit are materially different in that he opines to two unequivocal conclusions: (1) that Cixi Welday used a specific confidential drawing that constitutes a Quick Fitting trade secret to prepare a drawing it submitted to Intertek in connection with an attempt to bring a push-fit product to market; and (2) that Cixi Welday manufactured a push-fit product using a manufacturing mold that is Quick Fitting's proprietary property. Given the other fatal flaws with these opinions, the Court holds that the affidavit's expanded version of the Cixi Welday opinions should also be stricken because they materially exceed the scope of the expert disclosure, and therefore transgress the Fed. R. Civ. P. 26(a)(2)

requirement that, at least,[24] "a summary of the . . . opinions" must be disclosed, as well as that this violation is neither substantially justified nor harmless.[25]

By contrast, Ochoa's lead-content opinions do not share these problems. The Wai Feng parties cannot claim the affidavit's paragraphs about the lead-content of products come as a surprise. See Poulis-Minott v. Smith, 388 F.3d 354, 358-59 (1st Cir. 2004) (denying in part motion to strike because "the contents of the [opinion] should come as no surprise in view of [the expert's] disclosure in his expert designation[ ]"). With respect to lead, the affidavit "do[es] not attempt to present any new theories, methodologies, or opinions but instead attempt to explain or clarify the expert['s] previously submitted report[.]" Pickett v. IBP, Inc., Civil No. 96-A-1103-N, 2001 WL 36381846, at *1 (M.D. Ala. Mar. 28, 2001). To the extent that the motion to strike the affidavit challenges the paragraphs recapping Ochoa's lead-content opinion, it is denied.

## IV.    CONCLUSION

Based on the foregoing, the Court grants in part and denies in part the Wai Feng parties' motion to exclude Ochoa as an expert witness and motion to strike Ochoa's affidavit. ECF Nos. 182 & 205. The Court grants both motions in that Ochoa's proposed expert testimony (Ochoa Opin. ¶ 6-7 (the fourth paragraph contained in paragraph 1 of the expert opinion)) is excluded and his affidavit (Ochoa Aff. ¶¶ 7-9) is stricken to the extent that they purport to opine regarding similarities between Cixi Welday and Quick Fitting products. The Court denies the motions in all other respects.

---

[24] Because Ochoa was subject to the written report requirement, his Fed. R. Civ. P. 26(a)(2) obligation was to provide not just a "summary of the . . . opinions," but rather "a complete statement of all opinions," together with his qualifications for giving them. Compare Fed. R. Civ. P. 26(a)(2)(B)(i-iv), with Fed. R. Civ. P. 26(a)(2)(C)(ii). The above analysis is based on the summary of his opinions, which is all that Quick Fitting disclosed.

[25] An inadequate disclosure inflicts harm because the opposing party is unable timely to designate a counter expert as to the undisclosed opinion. Providence Piers, 2014 WL 5775663, at *4 (information that necessitates a response from rebuttal experts will cause delay and is not harmless). That is certainly the case here.

So ordered.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 21, 2018