# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

WAI FENG TRADING CO. LTD, and    :
EASTERN FOUNDRY & FITTINGS, INC.,    :
      Plaintiffs,    :
                                    :
      v.                               :     C.A. No. 13-33WES
                                    :
QUICK FITTING, INC.,    :
      Defendant.    :

<u>Consolidated with</u>

QUICK FITTING, INC.    :
      Plaintiff,    :
                                    :
      v.                               :     C.A. No. 13-56WES
                                    :
WAI FENG TRADING CO., LTD.,    :
EASTERN FOUNDRY & FITTINGS, INC.,    :
EASTERN FOUNDRY AND FITTINGS, LLC,    :
NINGO EFF MANUFACTORY CO, LTD.,    :
f/k/a/ NINGO W&F MANUFACTORY CO., LTD.,:
WAI MAO COMPANY, LTD.,    :
CIXI CITY WAI FENG BALL VALVE    :
COMPANY, LTD.,    :
W&F MANUFACTURING, and    :
CHI YAM "ANDREW" YUNG,    :
      Defendants.    :

## MEMORANDUM AND ORDER

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      In these contentiously litigated consolidated cases, Quick Fitting, Inc., defendant in 13-33 and plaintiff in 13-56, accuses the Wai Feng parties[1] of having engaged in willful spoliation of significant relevant evidence. Now pending before the Court for determination is Quick Fitting's

---

[1] The shortened party names and other references used in this memorandum and order are based on terms defined in a report and recommendation ("R+R I") that issued in these cases on December 17, 2018. ECF No. 230. Unless otherwise indicated, the Court uses the terms and protocols as defined in R+R I. <u>Id.</u> at nn.1, 5, 6, 9.

massive motion (ECF No. 220)[2] asking the Court to make a finding of spoliation as to twenty-four categories of electronically stored information ("ESI") and other physical evidence. Based on the alleged spoliation, Quick Fitting moves for adverse inferences that encompass most of the elements of its claims that the Wai Feng parties misappropriated trade secrets, violated restrictive covenants and sold it push-fit products with excessive lead content; the motion also seeks other unspecified ("monetary") sanctions, presumably attorney's fees. Some of the relief sought by the motion reprises arguments that the Court addressed in response to a motion Quick Fitting filed in 2015; at that time, the Court found "no evidence of any intentional withholding, refusal to search or spoliation of evidence by the Wai Feng defendant," as well as that, "this is a situation . . . [where] Quick Fitting is not happy with what it got as a result of the discovery because it doesn't support its theory of the case[.]" 13-56 ECF No. 189 at 7, 9.

For the reasons that follow, the motion for findings of spoliation of evidence is denied, except for two Items, as to which it is denied without prejudice to Quick Fitting seeking a curative sanction depending on what is presented at trial. In so ruling, the Court clarifies that this determination is based on Quick Fitting's failure as of this juncture to establish as to any of the Items in issue (except for the two) the prerequisites required by law to justify a sanction either to cure prejudice or for intentional or bad faith destruction of evidence. In the event that the evidence presented at trial establishes or permits the inference that such prerequisites exist as to any specific lost item of evidence, the Court's denial of this motion is not an impediment to Quick Fitting (or the Wai Feng parties)[3] seeking an adverse inference instruction or a curative sanction (such as preclusion) at that time.

---

[2] Unless otherwise stated, all ECF citations are to the docket number in 13-33, which is the lead case.

[3] In these cases, the failure to retain or preserve records has been a two-way street. By way of one example only, Quick Fitting's Vice President of Engineering, Libardo Ochoa, testified that he failed to do anything to preserve the

# I.    BACKGROUND[4]

## A.    Quick Fitting's Spoliation Motion

In its motion, Quick Fitting marshals evidence that it contends is sufficient for the Court

to find, as to twenty-four categories of Allegedly Spoliated Items ("ASI"), that the specific

evidence existed but was not produced due to destruction, loss or concealment.  Based on the

loss of seventeen of the Items (ASI # 1-13, 17-20), the motion asks the Court to hold that Quick

Fitting is entitled to the benefit of an adverse inference that the Wai Feng parties tried to sell

and/or sold Quick Fitting's proprietary products to Watts Water,[5] Cixi Welday,[6] Bow Group[7] and

through the Alibaba.com website.[8]  Based on the loss of three of the Items (ASI # 14-16), Quick

Fitting asks the Court for the adverse inference that CCWFBV manufactured Quick Fitting push-

fit product in the early stage of the contractual relationship between the parties[9] and that

CCWFBV later began to sell its own push-fit product line, at the same time that it still possessed

Quick Fitting's confidential drawings and designs.  Based on the recycling of two computers

(ASI # 23-24), Quick Fitting asks the Court for the sweeping adverse inference that those devices

contained data that would be harmful to the Wai Feng parties and helpful to Quick Fitting.

lead-content test results that Quick Fitting claims triggered its decision to stop paying for the push-fit products delivered by EFF Manufactory.  In denying the Wai Feng parties' motions to strike and exclude this aspect of the Ochoa expert opinion, the Court carved out the ability of the Wai Feng parties to seek a curative remedy to address the loss of the contemporaneous lead-testing documents, depending on what develops at trial.  ECF No. 233 at n.20.

[4] In limiting this exposition of the relevant background to Quick Fitting's spoliation motion, the Court assumes the reader's detailed familiarity with the background set forth in R+R I, as well as the background in a second report and recommendation ("R+R II") that issued on the same day as R+R I.  ECF No. 231.

[5] Quick Fitting's claim regarding Watts is summarized in R+R I at n.33.

[6] Quick Fitting's claim regarding Cixi Welday is summarized in R+R I at n.38.

[7] Quick Fitting's claim regarding Bow Group is summarized in R+R I at n.34.

[8] Quick Fitting's claim regarding Alibaba.com is summarized in R+R I at n.40.

[9] The parties' dispute regarding whether CCWFBV ever manufactured Quick Fitting push-fit is summarized in R+R I at nn.12, 39.

Finally, for two Items (ASI # 21-22), Quick Fitting points to lead-content testing of Quick Fitting sample products purchased by the Wai Feng parties on the open market and, to the degree that the samples tested or the related purchase documents are not available, asks for the inference that the lost Items were actually manufactured by EFF Manufactory and had excessively high lead-content levels.

Three of the Items are physical evidence – ASI # 1 is a sample plumbing product shown to Watts that the Wai Feng parties have admitted was push-fit manufactured based on Quick Fitting's proprietary designs; ASI # 13 includes "prototype[s]" that a Bow Group representative testified he saw at EFF Manufactory in 2013; and ASI # 21 encompasses samples of Quick Fitting products purchased by the Wai Feng parties on the open market. The remaining Items are ESI.

Quick Fitting's motion essentially concedes that it has no direct evidence of bad faith or intentional conduct by the Wai Feng parties to deprive Quick Fitting of the information's use in the litigation. ECF No. 220-25 at 4. The motion nevertheless argues that the Court should adopt the adverse inferences requested based on an evidentiary foundation sufficient to show that: (1) the Wai Feng parties were sloppy in responding to discovery, producing it piecemeal and not providing many documents until late in the fact discovery period; (2) Andrew Yung provided sworn statements and testimony that turned out to be inconsistent with what emerged later in discovery; and (3) each Item allegedly existed after the litigation commenced but now is lost or missing. Quick Fitting contends that this is enough to permit the Court to find that each of the Items was destroyed "during the litigation with full knowledge of specific claims asserted by Quick Fitting for which the spoliated evidence would have been directly relevant[.]" Id. at 8.

### B.       Wai Feng Parties' Duty to Preserve

Beyond vague allusions to the pendency of "the litigation," id., Quick Fitting's motion is silent regarding the timing of the onset of the Wai Feng parties' duty to preserve as to each of the twenty-four Items of ASI.  There is no suggestion that Quick Fitting ever sent a preservation notice to any of the Wai Feng parties.  Nor is there any suggestion that Quick Fitting complied with the Fed. R. Civ. P. 26(f) requirement that the parties confer regarding the Wai Feng parties' duty to preserve the Items now in issue (or anything else).  Fed. R. Civ. P. 26(f)(2-3).  Moreover, in the circumstances of this case, "the litigation" is an inadequate construct on which to ground a duty to preserve most of the Items.  The first salvo in these consolidated cases was fired by two of the Wai Feng parties, when they filed the predecessor case to 13-33 in Canada on August 2, 2012, following which it was refiled in the District of Rhode Island on January 17, 2013.  However, that case is a simple collection action focused on Quick Fitting's failure to pay for goods that were ordered, delivered and accepted.  The pendency of this "litigation" did not put any of the Wai Feng parties on notice of a potential claim of breach of the restrictive clauses in the three Agreements between the parties to which most of the Items pertain.

The January 25, 2013, filing of the Verified Complaint initiating 13-56 is the first event potentially placing at least two of the Wai Feng parties on notice of a duty to preserve documents related to a claim of breach of the restrictive clauses.  However, this pleading is primarily focused on Quick Fitting's claim that the product delivered was mislabeled, pitted, discolored, sloppily forged, or made with excessive lead.  Its claims for "misappropriation of trade secrets" (Count I) and "violations of confidentiality, non-disclosure and non-competition" (Count II) vaguely assert only that the two Wai Feng parties then named had "appropriated [Quick Fitting's trade secrets] for their own use and benefit," 13-56 ECF No. 1 ¶ 56, and that their actions in

"communicating with, attempting to do business with, and selling products to customers or prospective customers" violated various terms of the Agreements. Id. ¶ 61. A fair interpretation of these allegations is that they relate to Mueller Industries;[10] however, none of the ASI now in issue relates to Quick Fitting's Mueller-based claims.

Notice of a claim addressed to all of the Wai Feng parties was given well over a year later, on April 17, 2014, when Quick Fitting's First Amended Verified Complaint was filed. 13-56 ECF No. 59. This pleading expanded the named defendants in 13-56 to include all of the Wai Feng parties, among other entities and persons. See R+R I at nn.3, 5. In this pleading, Quick Fitting charges that the Wai Feng parties "marketed and sold push-fit plumbing pieces utilizing Quick Fitting's technology protected by the written agreements." 13-56 ECF No. 59 ¶ 117. The First Amended Verified Complaint also alleges that Quick Fitting was a purchaser of plumbing components and replacement parts from a Chinese company known as Cixi Welday, that Quick Fitting visited Cixi Welday in 2011 to assess its manufacturing and production capabilities, and that Cixi Welday began (in approximately 2014) "advertising, selling, and distributing a line of push-fit plumbing products[,]" which the Wai Feng parties were manufacturing for Cixi Welday using Quick Fitting's proprietary designs and trade secrets. Id. ¶¶ 151, 154, 157, 161-62. Alternatively, it claims that the Wai Feng parties sold or transferred Quick Fitting push-fit products to Cixi Welday for further sale and distribution. Id. ¶ 161. Similarly, the First Amended Verified Complaint alleges that CCWFBV is "offering for sale and selling push-fit products that were acquired from [the Wai Feng parties] who were prohibited from selling them." Id. ¶ 174. This complaint also alleges that the Wai Feng parties "sold or are attempting to sell Quick Fitting's push-fit plumbing technology to other entities," and that they gave price

_____

[10] Quick Fitting's allegations regarding the Wai Feng parties' contact with Mueller are set out in R+R I nn.35-37.

quotes to a "major customer" of Quick Fitting for its push-fit product line. Id. ¶¶ 177-78. Count I of the First Amended Verified Complaint claims that the Wai Feng parties breached the restrictive clauses by attempting to do business with and sell products to Quick Fitting's customers, by selling Quick Fitting push-fit plumbing products and by selling push-fit plumbing of any type. Id. ¶¶ 175-83.

Quick Fitting's remaining pleadings – its September 19, 2014, counterclaim (ECF No. 68); its December 9, 2014, amended counterclaim (ECF No. 81); and its October 1, 2015, Second Amended Verified Complaint (13-56 ECF No. 135) – do not add anything new regarding its claims of breach of the restrictive covenants.

### C.    Quick Fitting's Prior Motion for Sanctions Based on Failure to Preserve and Produce Relevant Discovery

On November 25, 2015, Quick Fitting filed a motion asking the Court to sanction the Wai Feng parties for discovery misconduct by requiring them to pay for a forensic ESI vendor of Quick Fitting's choice to image all of the content of all of the Wai Feng parties' computer hard drives, devices, servers and cloud-based ESI repositories, which material was to be turned over to Quick Fitting without regard to relevancy or privilege. ECF No. 119. Among other reasons for this sanction, the 2015 motion focused on the following: Andrew's Yung's 2013 recycling of his computer;[11] references in emails between the Wai Feng parties and Watts suggesting the possibility of other, unproduced, electronic material;[12] screen shots of the Alibaba.com website that Quick Fitting argued suggested that the Wai Feng parties posted push-fit products yet had not admitted to having done so;[13] the possibility that the Wai Feng parties might have drawings

---

[11] This aligns with ASI # 23 in the pending motion.

[12] This aligns with ASI # 2-8 in the pending motion.

[13] This aligns with ASI # 17-20 in the pending motion.

or other documents related to Cixi Welday's manufacturing of components for the Quick Fitting products;[14] documents related to business transactions in 2010 with CCWFBV;[15] and documents and items reflecting lead-content testing done by the Wai Feng parties of Quick Fitting products purchased on the open market.[16] As summarized in the footnotes below, the 2015 motion's allegations of discovery misconduct relate to many of the Items now in issue.

Because of Quick Fitting's failure to meet and confer before filing the 2015 motion, the Court was required to hold three hearings and three phone conferences with the parties to fully address the issues raised.[17] At the final hearing, the Court found as follows: there was "no evidence of any intentional withholding, refusal to search or spoliation of evidence by the Wai Feng defendant," 13-56 ECF No. 189 at 7; that the remedy sought by Quick Fitting was contrary to Fed. R. Civ. P. 26(b)(1)'s focus on proportionality; and that at least some of the dispute was the result of Quick Fitting's failure to comply with the Fed. R. Civ. P. 26(f)(2-3) requirement to discuss ESI, including the preservation of discoverable evidence, at the outset of the litigation, as well as its failure to specify format in its document requests under Fed. R. Civ. P. 34(b)(1)(C). 13-56 ECF No. 189 at 8-9. The facts developed in connection with this motion also established clearly that neither the Wai Feng parties nor Quick Fitting is sophisticated with respect to ESI and litigation. In the end, based on these findings and the determination "that Quick Fittings [sic] is not happy with what it got as a result of the discovery because it doesn't support its

---

[14] This aligns with ASI # 9 & 12 in the pending motion.

[15] This aligns with ASI # 14-16 in the pending motion.

[16] This aligns with ASI # 21-22 in the pending motion.

[17] At the initial hearing held on January 25, 2016, the Court continued the matter to February 1, 2016, so that the parties could meet and confer. When it was plain that they still had not adequately done so, a phone conference with the parties was set for February 9, 2016; further phone conferences were held on February 23 and March 1, 2016. The final hearing was on March 16, 2016.

theory of the case and that it now is seeking what appears to be the production of irrelevant materials at a cost that is disproportionate to the case in the hope that something might be found[,]" the Court denied the motion for sanctions.  Id. at 9.  Nevertheless, interpreting the motion not only as a motion for sanctions, but also as a motion to compel, the Court granted it in part by entering a limited order directing the Wai Feng parties to complete certain searches of a specified database.  Text Order of Mar. 16, 2016.

## II.      APPLICABLE LAW

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Ann Rivera v. Sam's Club Humacao, Civil No. 16-2307 (ADC), 2018 WL 4705915, at *7 (D.P.R. Sept. 28, 2018).  To support an inference of spoliation, "the party urging that spoliation has occurred must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)[,]" as well as that "the opposing party had notice of a potential claim and of the relevance to that claim of the destroyed evidence."  Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012); McDonald v. City of Boston, 334 F. Supp. 3d 429, 436 (D. Mass. 2018) (movant must demonstrate that evidence was destroyed or not preserved), appeal filed, No. 18-1948 (Oct. 5, 2018).  Federal law controls the issue of spoliation in cases pending in federal court.  Hofer v. Gap, Inc., 516 F. Supp. 2d 161, 170 n.10 (D. Mass. 2007).

For lost physical evidence, sanctions for spoliation may be imposed based on the Court's inherent power.  Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991); see Hefter Impact Techs., LLC v. Sport Maska, Inc., Civil Action No. 15-13290-FDS, 2017 WL 3317413, at *8 (D. Mass. Aug. 3, 2017) (contrasting standards for spoliation of ESI and physical evidence);

Jimenez-Sanchez v. Caribbean Rests., LLC, 483 F. Supp. 2d 140, 143 (D.P.R. 2007) ("Through the court's inherent power to manage its own affairs, it may sanction a party for spoliation.").

For lost ESI, which is most of what is in issue here, the starting point for the Court's analysis must be Fed. R. Civ. P. 37(e) as amended in 2015, which addresses the failure to preserve ESI. Moody v. CSX Transp., Inc., 271 F. Supp. 3d 410, 425-26 (W.D.N.Y. 2017) (although destroyed laptop is tangible, it is ESI stored in it that is relevant evidence; Fed. R. Civ. P. 37(e) must be applied); Hefter Impact Techs., 2017 WL 3317413, at *6 (sanctions for loss of ESI is governed by Fed. R. Civ. P. 37(e)). The Order adopting this amendment provides that it became effective on December 1, 2015, and "shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." 2015 U.S. Order 0017. Based on the Order, courts hold that the amended rule governs pending proceedings "unless its application would be unjust or impracticable." CAT3, LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 495-96 (S.D.N.Y. 2016) (emphasis in original); see Grodzitsky v. Am. Honda Motor Co., No. CV121142SVWPLAX, 2017 WL 2616917, at *3 (C.D. Cal. June 13, 2017). Further, "because the amendment is in some respects more lenient as to the sanctions that can be imposed for violation of the preservation obligation, there is no inequity in applying it" to pending cases. CAT3, LLC, 164 F. Supp. 3d at 495-96.

Quick Fitting's motion made no reference to Fed. R. Civ. P. 37(e), while the Wai Feng parties contended that the amended Rule lays out the correct decisional framework for the Items that constitute ESI. On Reply, Quick Fitting did not point to anything that would be unjust or impracticable about applying the amended Rule, but rather argued that this case was filed before December 1, 2015, so the Court should disregard Fed. R. Civ. P. 37(e), as amended. I disagree – the pending spoliation motion was filed two and a half years after the effective date of the

amended Rule.  In such circumstance, courts considering the question consistently hold that Fed.

R. Civ. P. 37(e) should be applied even though the case was commenced prior.  See Moody, 271

F. Supp. 3d at 425 (both just and practicable to apply amended Rule 37(e) to 2007 case because

motion filed after effective date of amendment; generally, motions filed after effective date are to

be decided under amended Rule); Hefter Impact Techs., 2017 WL 3317413, at *6 ("it appears

both just and practicable to apply the amended Rule 37 to" case filed before effective date of

amendment, where motion was filed after); Grodzitsky, 2017 WL 2616917, at *3 ("[T]he

Supreme Court's Order creates a presumption that the amended Rules apply to [c]ases ongoing

so long as the application of the amended Rules would not be unjust or impracticable.").

On Reply, Quick Fitting also attempted to rebut the Wai Feng parties' argument that the

Court should rely on Fed. R. Civ. P. 37(e) by arguing that "only a portion of the spoliation

motion concerns ESI, and Quick Fitting believes that all materials produced by the Yungs during

the litigation were hard-copy documents[.]"  ECF No. 227 at 23.  This argument is doomed by

the force of Quick Fitting's opening brief, as well as its 2015 motion focused on the same

material – while it is conceivable that part of the discovery problem Quick Fitting once faced

was caused by the parties' limitation of searching to hard copies[18] (resulting in the piecemeal

production of which Quick Fitting has been so critical), Quick Fitting has been consistently clear

that it is the Wai Feng parties' failure to search for, or loss of, ESI that is the crux of Quick

Fitting's discovery complaints.

At bottom, Quick Fitting has failed to point to any reason why the application of Fed. R.

Civ. P. 37(e) to the pending motion would be unjust or impracticable.  To the contrary, the Court

---

[18] See n.24 infra.

finds that it is both just and practicable to rely on the amended version of the Rule with respect to Quick Fitting's motion based on alleged spoliation of lost ESI.

### A.    Loss of ESI

To trigger the application of Fed. R. Civ. P. 37(e)[19] to a claim of lost ESI, the movant must establish, first, that ESI has been lost and is not available in any other location.  Hefter Impact Techs., 2017 WL 3317413, at *7 (movant failed to show that relevant emails in fact were destroyed; sloppiness in discovery is not proof of lost ESI); see Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Second, the court must consider whether and when a duty to preserve the lost ESI arose; this requires consideration of when the party in possession of the ESI was on notice not only of the litigation but also that the ESI would be relevant to the litigation.  Id.; see Jenkins v. Woody, Civil Action No. 3:15cv355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017) (duty to preserve arises when a party reasonably should know that the evidence may be relevant to anticipated litigation); Gonzalez-Bermudez v. Abbott Labs. PR Inc., 214 F. Supp. 3d 130, 160-63 (D.P.R. 2016) (court must determine if allegedly spoliated ESI should have been preserved and, if so, when did such duty emerge).  Further, Fed. R. Civ. P. 37(e) applies only if the party in possession of the lost ESI failed to take "reasonable steps" to

---

[19] As amended, Fed. R. Civ. P. 37(e) provides in full:

> Failure to Preserve Electronically Stored Information.  If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1)  upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2)  only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > > (C) dismiss the action or enter a default judgment.

preserve the information and the information could not have been restored or replaced through additional discovery. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. In applying the requirement of "reasonable steps," courts must be mindful that "perfection in preserving all relevant electronically stored information is often impossible," as well as that this factor requires consideration of the litigation sophistication of the party in possession of the ESI and the proportionality to the litigation of costly and aggressive preservation efforts. Id.; see Jenkins, 2017 WL 362475, at *16 (court orders sanction to cure prejudice caused by loss of video of prisoner's dying moments in part based on finding that preservation was called for by well-established protocol and easily accomplished).

If the movant establishes that a party failed to take reasonable steps to preserve ESI after a duty to preserve it arose and that the information cannot be restored or replaced through additional discovery, the court's next inquiry is whether the loss of the ESI has caused prejudice or whether the party in possession acted "with the intent to deprive another party of the information's use in the litigation." Fed R. Civ. P. 37(e)(1-2).

Subsection (e)(1) of the Rule is applicable "upon a finding of prejudice[.]" Fed. R. Civ. P. 37(e)(1). The Rule is silent regarding how the court makes the determination of prejudice, including which party carries the burden. Int'l Bus. Machs. Corp. v. Naganayagam, No. 15 Civ. 7991 (NSR), 2017 WL 5633165, at *6-7 (S.D.N.Y. Nov. 21, 2017) (prejudice not found despite loss of emails where movant failed to depose witness who could have testified regarding their content or how other lost ESI was material to claim). The Advisory Committee Notes acknowledge that "placing the burden of proving prejudice on the party that did not lose the information may be unfair," but, "[i]n other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the

abundance of preserved information may appear sufficient to meet the needs of all parties." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Nevertheless, proof that the lost ESI is important or material to a significant issue should fall on the movant. Id. It is also clear that "[a] dispute as to whether or not a potentially relevant document ever existed does not establish prejudice," particularly in a circumstance where most of the underlying claims have survived summary judgment. Knight v. Boehringer Ingelheim Pharm., Inc., 323 F. Supp. 3d 837, 860 (S.D. W. Va. 2018); see Hefter Impact Techs., 2017 WL 3317413, at *7 (no prejudice where evidence shows that laptop was wiped during period when there was no duty to preserve information it was likely to contain and any relevant material was "on the margin").

If prejudice is found, the court is authorized to employ measures "no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e)(1); TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo, Civil No. 15-2121 (BJM), 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017). These include prohibiting the party that failed to preserve from putting on certain evidence, permitting the parties to present evidence or argument to the jury regarding the loss of the ESI or giving the jury instructions to assist in its evaluation of such evidence or argument. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. For example, in Jenkins, the court found that the loss of the video depicting the decedent's dying moments in a holding cell inflicted "grave prejudice[,]" but did not find "sufficient proof of intent directed toward depriving" the plaintiff of use of the video data. 2017 WL 362475, at *17-19. Accordingly, the court declined to give an adverse inference instruction but opted to allow the parties to present arguments to the jury regarding the loss of the critical video, as well as to preclude the defendants from arguing that the video would have corroborated their version of the event. Id. The Rule is clear – without a finding of intentional spoliation, an adverse inference that the ESI

was unfavorable to the party that lost it is not appropriate.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Subsection (e)(2) applies "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ. P. 37(e)(2).  If such intent is shown, there is no need separately to establish prejudice.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  The purpose of Fed. R. Civ. P. 37(e)(2) is to provide for specified and very severe measures to address or deter failure to preserve ESI.  In particular, the Rule limits the court's ability to draw adverse inferences from lost ESI to circumstances where the court finds that the information was lost with the intent to prevent its use in the case. Naganayagam, 2017 WL 5633165, at *5 ("a Court may not issue an adverse inference instruction unless the Court finds" the requisite intent) (citing Best Payphones, Inc. v. City of New York, No. 1-CV-3924 (JG)(VMS), 2016 WL 792396, at *4 (E.D.N.Y. Feb. 26, 2016)).

The intent requirement in Fed. R. Civ. P. 37(e)(2) is "stringent" – it must be based on more than just negligence or even gross negligence in producing or preserving ESI.  See Knight, 323 F. Supp. 3d at 845; Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Thus, a court cannot conclude that the mere failure to retain ESI establishes that a party is guilty of acting with intent to deprive the other party of relevant information.  Knight, 323 F. Supp. 3d at 860.  Nevertheless, intent may be inferred.  For example, courts have inferred intent based on evidence that ESI once existed and would have been material to a fact issue pivotal to the outcome of the case; that the spoliator, aware of its content and materiality, engaged in an affirmative act to cause it to be lost; that the spoliating party knew of its duty to preserve at the time of the act; and that the affirmative act causing the loss cannot be credibly explained as it amounts to deviation from established protocols.  Moody, 271 F. Supp. 3d at 431-32 (intent

found based on proof that, after being reviewed immediately following tragedy, critical recorder data from train that ran over plaintiff was lost because defendant failed to follow procedures to preserve and then destroyed laptop on which only copy was saved) (citing <u>Ala. Aircraft Indus., Inc. v. Boeing Co.</u>, 319 F.R.D. 730, 746 (N.D. Ala. 2017)).  Similarly, if a clear preservation letter is sent that specifies the computer to be safeguarded and identifies the ESI in it to be preserved, after which the recipient of the letter destroys the computer with no attempt to preserve the ESI, a finding of intent is warranted.  <u>TLS Mgmt.</u>, 2017 WL 1155743, at *2.

In some circuits, the burden on the movant is to show intent by clear and convincing evidence.  <u>See</u> <u>Knight</u>, 323 F. Supp. 3d at 860 (Fourth Circuit applies clear and convincing evidence standard where a relatively harsh sanction like an adverse inference is sought).  As of this writing, the First Circuit has yet to address the issue.  <u>But cf.</u> <u>Anderson v. Cryovac, Inc.</u>, 862 F.2d 910, 923-26 (1st Cir. 1988), <u>aff'd</u>, 900 F.2d 388 (1st Cir. 1990) (to prevail on motion for new trial based on discovery misconduct, movant must meet clear and convincing evidence standard).  The finding of intent may be made by the jury.  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Since the content of a jury instruction is normally formulated after the conclusion of evidence, or at least during trial, courts often consider it premature to conclude that a spoliation instruction will actually be given until the final charge conference.  <u>Scott v. IBM Corp.</u>, 196 F.R.D. 233, 250 (D.N.J. 2000), <u>as amended</u>, (Nov. 29, 2000).

**B.    <u>Loss of Physical Evidence</u>**

For the loss of physical evidence, "an adverse inference instruction may be allowed when a party fails to produce [evidence] that exists or should exist and is within [the party's] control." <u>Astro-Med, Inc. v. Nihon Kohden Am., Inc.</u>, 591 F.3d 1, 20 (1st Cir. 2009).  However, such an

instruction "usually makes sense only where the evidence permits a finding of bad faith destruction."  Sharp v. Hylas Yachts, LLC, 872 F.3d 31, 42 (1st Cir. 2017) (court declines to give adverse inference instruction or to dismiss claim despite loss of sailing yacht's boom) (quoting United States v. Laurent, 607 F.3d 895, 902 (1st Cir. 2010)).  Alternatively, dismissal is the appropriate remedy when the accused spoliator is sophisticated and acutely aware that the evidence in question is pivotal, as where an insurance company seeking subrogation fails to preserve physical evidence essential to support its own claim that a defective water connector caused the damage.  Amica Mut. Ins. Co. v. BrassCraft Mfg., Co., C.A. No. 17-103-JJM-LDA, 2018 WL 2433560, at *2-3 (D.R.I. May 29, 2018).

Upon a finding of spoliation, "a district court has broad discretion in choosing an appropriate sanction."  Sharp, 872 F.3d at 42.  However, in the absence of evidence of bad faith or a bad motive, the remedy for spoliation should be based on the prejudice to the other party and must be closely calibrated to what is necessary to address the harm.  Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 95-96 (1st Cir. 1999) ("[B]ad faith is not essential . . . the primary aim is remedial, at least absent willful destruction").

Sanctions for spoliation serve a "prophylactic and punitive" purpose.  Nation-Wide Check Corp., Inc. v. Forest Hills Distribs., Inc., 692 F.2d 214, 218 (1st Cir. 1982) (explaining that this rationale has a long history) (citing Armory v. Delamirie, 1 Stra. 505, 93 Eng. Rep. 664 (K.B. 1722)).  "When determining whether to impose discovery sanctions for spoliation, the threshold question that the court must decide is whether relevant evidence existed."  Lologo v. Wal-Mart Stores, Inc., Case No.: 2:13-cv-1493-GMN-PAL, 2016 WL 4084035, at *2 (D. Nev. July 29, 2016).  "Before an adverse inference can arise, the sponsor of the inference must lay an evidentiary foundation, proffering evidence sufficient to show that the party who destroyed the

document knew of (a) the claim (that is, the litigation or the potential for litigation), and (b) the document's potential relevance to that claim." Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 46 (1st Cir. 2010). Providing an adverse inference instruction at trial "is based in part on the commonsense observation that a party who 'destroys a document (or permits it to be destroyed) when facing litigation, knowing the document's relevancy to issues in the case, may well do so out of a sense that the document's contents hurt his position.'" Id. at 45-46 (quoting Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998)).

Many courts reject requests for adverse inference instructions until a party lays the evidentiary foundation at trial. See, e.g., Zagklara v. Sprague Energy Corp., Docket no. 2:10-cv-445GZS, 2013 WL 12234457, at *1 (D. Me. January 15, 2013) (motion for adverse inference instruction premature; if foundation laid in trial evidence, proposed instruction will be considered); see also Scott, 196 F.R.D. at 250 ("Plaintiff's application for sanctions arising from destruction of defendant's documents will be denied without prejudice to the possibility that a spoliation inference will be given to the jury. The availability of that instruction will depend upon the proofs adduced *at trial*.") (emphasis added); Miller v. Lemhi Cty., Case No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *7 (D. Idaho Mar. 2, 2018) (denying a spoliation motion as premature because "it is not clear what evidence the parties will present at trial and whether the evidence will support a spoliation instruction"). "Before an adverse inference may be drawn from the absence, loss, or destruction of evidence, the Plaintiff must show at trial, among other things, that the missing evidence would have been relevant to an issue, and otherwise would naturally have been introduced into evidence." Selee Corp. v. McDanel Advanced Ceramic Techs., LLC, Civil Case No. 1:15-CV-00129-MR, 2016 WL 4546446, at *1 (W.D.N.C. Aug. 31, 2016).

## III.    ANALYSIS

<u>Watts Sample (ASI # 1)</u>.  Quick Fitting's first Item (ASI # 1) – the push-fit sample that Andrew Yung showed to Watts – is a physical item that is unambiguously lost.  However, its loss does not implicate any relevant factual dispute in that Andrew Yung has long admitted that he took a push-fit item that had been manufactured for Quick Fitting pursuant to its proprietary specifications to a meeting with Watts to show as a sample.  QF Ex. I at 7.[20]  What is disputed is whether Yung used the Quick Fitting push-fit sample to show Watts what EFF Manufactory was capable of manufacturing in the course of negotiations to manufacture something different for Watts, or whether he was trying to sell Watts the same product line.  There is no need to go further – with no dispute that this sample was Quick Fitting's proprietary push-fit, neither bad faith nor intentionality may be inferred from its loss.  <u>Sharp</u>, 872 F.3d at 42; <u>Amica Mut. Ins.</u>, 2018 WL 2433560, at *2-3.  Nor is Quick Fitting prejudiced by the loss.  <u>Trull</u>, 187 F.3d at 95-96.  Therefore, Quick Fitting's motion for an adverse inference or other sanction as to ASI # 1 is denied.

<u>Watts ESI (ASI # 2-8)</u>.  The next seven Items arise from references in the emails exchanged between the Wai Feng parties and their customer, Watts, between October 2012 and April 2013.  All of the allegedly lost Items appear to be ESI to the extent that they ever existed in any format.  There are fatal problems with Quick Fitting's request for an adverse inference arising from the "loss" of ASI # 2-8.

First, these Items featured prominently in Quick Fitting's 2015 motion for sanctions, based on which the Court held that the Watts emails do not give rise to an inference of

---

[20] In support of and in opposition to the spoliation motion the parties rely on exhibits that they filed with the motion. Unless otherwise indicated, the exhibit references in this memorandum and order are to those exhibits, with Quick Fitting's exhibits denominated as "QF" and the Wai Feng parties' exhibits denominated as "WF."

intentional destruction or spoliation; the pending spoliation motion provides the Court with nothing new to support a different outcome.  Second, at the time of the first electronic communication in issue (October 31, 2012), Quick Fitting had asserted no claims and sent no preservation notice.  Therefore, the Wai Feng parties were not subject to a duty to preserve. Hefter Impact Techs., 2017 WL 3317413, at *7.  The later emails were exchanged shortly after the filing of Quick Fitting's January 25, 2013, pleading, which focuses on improper attempts to do business with Quick Fitting's customers, not with the Wai Feng parties' customers.  Quick Fitting fails to clarify why that claim would have caused the Wai Feng parties, who are unsophisticated litigants, to understand that they were subject to a duty to preserve communications with Watts, which is the Wai Feng parties' customer.  More substantively, it was the Wai Feng parties who produced the first Watts document.  Thus, it was the Wai Feng parties who revealed (and did not cover up) that the Watts communications had occurred, eliminating any potential inference of intentional destruction.[21]  Fed. R. Civ. P. 37(e)(2) (intent required for adverse inference).  Further, it is far from clear that the Items Quick Fitting contends were spoliated are documents that ever existed, which is essential to demonstrate prejudice.[22] Hefter Impact Techs., 2017 WL 3317413, at *7 (movant must prove spoliated emails in fact were

---

[21] Quick Fitting makes much of the Wai Feng parties' supposed denial of the Watts communications prior to their production of the email confirming that they occurred.  However, the interrogatory answer Quick Fitting relies on for this proposition says the opposite: it admits that the Wai Feng parties "have been asked about push-fit plumbing products by others[,]" denying only any recollection of the specifics of these conversations.  See ECF No. 220-25 at 19.

[22] By way of example, Quick Fitting focuses on a reference in a third-party email to "these items" and asks the Court to conclude that it necessarily proves that the email had an attachment with photographs or a list of the "items."  QF Ex. H at 1.  The author of the email was deposed; she could not recall what she meant, except she did recall that no samples, literature or pricing were sent.  WF Ex. I at 5-6.  The inference that ESI relating to "these items" existed and was spoliated simply does not flow from this foundation.

destroyed).  Nor has Quick Fitting sustained its burden of establishing that, as to some of the lost

Items, they cannot be "replaced through additional discovery[.]"[23]  Fed. R. Civ. P. 37(e).

At most, Quick Fitting has demonstrated that the Wai Feng parties did not focus on

preservation of the Watts communications at the time they were created, so that some were lost

in the ordinary course of business, as well as that they were sloppy in responding to discovery

regarding Watts in that documents were produced seriatim, as Quick Fitting pressed and the Wai

Feng parties searched additional databases.  Hefter Impact Techs., 2017 WL 3317413, at *7

(sloppiness in discovery is not proof of spoliation); Fed. R. Civ. P. 37(e) advisory committee's

note to 2015 amendment (negligence or even gross negligence not sufficient for adverse

inference arising from loss of ESI).  In any event, based on what was produced, amplified by the

documents and testimony Quick Fitting procured from Watts itself, Quick Fitting presented

enough to support my recommendation that its claims based on the Watts interactions should

survive summary judgment.  See R+R I at n.33; Knight, 323 F. Supp. 3d at 860 (that underlying

claims survived summary judgment dispels potential for prejudice).

At this point, Quick Fitting's proof falls well short of demonstrating that actual evidence

related to the Watts communications was lost after the duty to preserve it attached, never mind

spoliation serious enough to support an adverse inference or prejudice requiring a curative

sanction.  The spoliation motion as to ASI # 2-8 is denied.

Cixi Welday ESI (ASI # 9-12).  Focusing first on ASI # 9, the Court finds that Quick

Fitting has failed to demonstrate that the Wai Feng parties intentionally spoliated drawings and

---

[23] For instance, Quick Fitting is bitterly dissatisfied with the completeness of the Wai Feng parties' production of emails reflecting communications with "CSA," a certifying agency, while the Wai Feng parties persuasively claim that they produced all responsive documents related to ASI # 5-6 that exist.  In such circumstance, Quick Fitting could have attempted to depose CSA to prove otherwise.  Its failure to do so is fatal to its claim of actionable spoliation of this ESI.  See Fed. R. Civ. P. 37(e) (for spoliation sanctions, movant must show that documents sought could not be turned up by additional discovery).

designs that they "necessarily exchanged" with Cixi Welday so it could manufacture components (grip rings and plastic collars) for the Quick Fitting push-fit products. It has failed to establish either a duty to preserve or the failure to take reasonable steps to preserve. Nor has it shown prejudice arising from the Wai Feng parties' inability to find and produce these documents.

The most serious flaw with ASI # 9 is that examination of Quick Fitting's own verified pleadings, which Quick Fitting omitted to mention in its motion, puts the lie to the foundational proposition that these drawings must once have been in the possession of the Wai Feng parties because they were "necessarily exchanged" with Cixi Welday.

The premise for Quick Fitting's adverse inference request arising from this supposedly lost ESI is Andrew Yung's inability to remember whether EFF Manufactory sent designs or drawings to Cixi Welday to facilitate its manufacture of the components, coupled with the Wai Feng parties' failure to produce any of the designs or drawings that Quick Fitting contends they "necessarily exchanged" with Cixi Welday so it could make the components. Quick Fitting asks the Court to infer that Cixi Welday could not make components without drawings and that the Wai Feng parties were the only conceivable source of such drawings, leading to the conclusion that they were "necessarily exchanged." In its 2015 motion based on the same failure to produce, Quick Fitting similarly represented to the Court that "[Cixi Welday] now has been revealed to have been a supplier of some of component pieces [sic] to EFF for the Quick Fitting pieces[,]" indicating that Quick Fitting had only just discovered that the Wai Feng parties "necessarily" had been surreptitiously sending Cixi Welday Quick Fitting's drawings so it could manufacture components, which the Wai Feng parties covered up though the spoliation of this evidence. ECF No. 119-1 at 13 (emphasis supplied).

It is troubling to juxtapose these arguments with Quick Fitting's verified pleadings, which admit that it was <u>Quick Fitting itself</u> that "used to purchase component and replacement parts for its push-fit plumbing products from [Cixi Welday]," ECF No. 135 ¶ 150; ECF No. 59 ¶ 151, as well as that it was <u>Quick Fitting itself</u> whose principals visited Cixi Welday in 2011 (during Quick Fitting's contractual relationship with the Wai Feng parties) to "assess its manufacturing and production capabilities" in connection with the supply of components. <u>E.g.</u>, 13-56 ECF No. 135 ¶ 153; ECF No. 59 ¶ 154. Consistent with Quick Fitting's verified pleadings, the Wai Feng parties have directed the Court to documents confirming that it was <u>Quick Fitting itself</u> that directly sent at least some drawings to Cixi Welday. ECF No. 181-11 at 6, 10.

When the Court considers Quick Fitting's significant direct involvement with Cixi Welday in connection with its manufacture of components, including the purchasing of product and the sending of drawings, the representation in the spoliation motion that the designs and drawing were "necessarily exchanged" between the Wai Feng parties and Cixi Welday, as well as the implication that it was done surreptitiously so that intentional spoliation may be inferred, borders on disingenuous. Nor has Quick Fitting shown any prejudice from the Wai Feng parties' inability to locate and produce drawings related to a purchasing arrangement of which Quick Fitting was fully aware, particularly where it is equally plausible that they may have been sent to Cixi Welday by Quick Fitting itself and may have been reviewed by Quick Fitting during its 2011 visit to assess Cixi Welday's manufacturing capability. Nor has Quick Fitting established that the Wai Feng parties were under a duty to preserve whatever component-related drawings they may have sent to Cixi Welday until years afterwards, when Quick Fitting pressed for them in discovery; there also is not a scintilla of evidence of the failure to take reasonable steps to

preserve. Consistent with and reaffirming its 2015 holding, the Court holds that Quick Fitting has failed to establish any of the Fed. R. Civ. P. 37(e) prerequisites either for an adverse inference or for a curative sanction with respect to ASI # 9.

As to ASI # 10-11, having failed in its discovery requests and at the Fed. R. Civ. P. 26(f) conference to ask for metadata,[24] the loss of the metadata that might explain how an email, for example, copied to andrews@eff-fitting.com came to be forwarded by jimmy@eff-fitting.com Andrew, proves nothing. Having done nothing to give rise to a duty to preserve metadata, Quick Fitting cannot establish that its loss supports an inference of intentional spoliation, particularly by the Wai Feng parties, who are not sophisticated litigants with respect to ESI. Further, Quick Fitting points to nothing related to the missing metadata that amounts to prejudice. Similarly, Quick Fitting's vague catch-all claim (ASI # 12), which alleges spoliation of unspecified "[o]ther communications,"[25] fails to meet any of the Fed. R. Civ. P. 37(e) elements; it is particularly deficient in the face of the stringent standard for an adverse inference instruction set by Fed. R. Civ. P. 37(e)(2).

Quick Fitting's spoliation motion as to ASI # 9-12 is denied.

Bow Group "Prototypes" (ASI # 13). Quick Fitting argues that the Wai Feng parties are guilty of spoliation based on the existence, followed by the loss, of a specific physical

---

[24] Quick Fitting did not specify format in its document requests and did nothing to make clear that its requests required the production of metadata. As a result, throughout the fact discovery period in these cases, both parties consistently produced documents in either hard copy or searchable PDF format, without metadata. Quick Fitting did not ask for production in a format with the metadata intact until the very end of the case; in reliance on Fed. R. Civ. P. 34(b)(2)(E)(iii), this request for production of already-produced material a second time in a different format was denied, except for two items, first by the magistrate judge and then by the District Court. ECF No. 150 at 10-13; ECF No. 164.

[25] To the extent that Quick Fitting gives any content to ASI # 12, it seems to be based on the Wai Feng parties' failure to produce purchase orders, invoices and payment records arising from Cixi Welday's manufacturing of components. Viewed from this perspective, the motion for spoliation as to ASI # 12 also fails for the same reasons discussed above for ASI # 9.

"prototype" that the Bow Group representative testified he saw during a trip to EFF
Manufactory.  Andrew Yung has no recollection of what the Bow Group representative was
talking about, WF Ex. L at 3, while the Bow Group representative himself was vague about what
he saw.  WF Ex. M at 2-3 ("Andrew had some prototypes, maybe would be the right term to
use[.]"); id. at 5 ("The Push-Fit Fittings all look very similar to each other."); see R+R I at n.34.
Further and more fundamentally, the adverse inference that Quick Fitting requests does not
logically flow – this vignette establishes, at most, that EFF Manufactory was struggling at the
early stages of trying to develop its own push-fit line, which would not have been a struggle if it
simply copied what it had been making for Quick Fitting.  At bottom, after the Bow Group
representative saw whatever he saw, and despite his desire to purchase a push-fit product line, he
left EFF Manufactory with nothing except an invitation for the Wai Feng parties to "call [him]
when [they] have all [their] ducks lined up."  R+R I at n.34.

    The Court finds that Quick Fitting has failed to establish that the Wai Feng parties would
have understood that they had a duty to preserve whatever the Bow representative saw that he
considered to be a "prototype."  Accordingly, there is nothing to support a finding of intentional
destruction or bad faith failure to preserve.  Booker, 612 F.3d at 45-46 (adverse inference
instruction may be considered if commonsense observation compels conclusion that party in
possession of item destroyed it out of sense that it hurt his position in litigation).  The spoliation
motion based on ASI # 13 is denied.

    CCWFBV Purchase Orders and Related Records (ASI # 14-16).  Quick Fitting alleges
spoliation of 2010 purchase orders and related materials referenced in electronic communications
as having been sent by the Wai Feng parties to CCWFBV; the Wai Feng parties were able to
locate and produce some of this material, but not all.  The Court rejected a similar claim as

evidence of spoliation or intentional destruction in denying the 2015 motion. Quick Fitting's current motion still fails to explain why the Wai Feng parties were subject to a duty to preserve CCWFBV purchase orders and related materials from 2010, particularly where the CCWFBV-based claim was not asserted until April 2014. There is nothing here that comes close to supporting the requested adverse inferences. The motion as to ASI # 14-16 is denied.

Alibaba.com Postings (ASI # 17-20). Alibaba.com is a publicly accessible website. Quick Fitting has alleged that the Wai Feng parties spoliated electronic evidence that they were posting and selling push-fit manufactured using Quick Fitting proprietary designs on Alibaba.com. To support the spoliation claim, Quick Fitting relies on: (1) the unavailable computer files of an employee of the Wai Feng parties who dealt with Alibaba in 2011; (2) the Wai Feng parties received a handful of third-party inquiries in 2014 about push-fit through Alibaba.com, but did not produce responses; and (3) sloppiness in the Wai Feng parties' discovery responses about Alibaba.com. The Wai Feng parties have responded that they posted irrelevant non-push-fit plumbing products on Alibaba.com, never posted push-fit products and did not sell anything through the website.

The Court's threshold problem with this as spoliation supporting the extraordinary adverse inferences Quick Fitting seeks is that Alibaba.com is a public website. If the Wai Feng parties had relied on Alibaba.com to post and sell Quick Fitting's proprietary push-fit, Quick Fitting would immediately know about it. It defies logic to posit that the Wai Feng parties' failure to produce evidence of push-fit postings on Alibaba.com (ASI # 18) or of push-fit sales through the Alibaba.com portal (ASI # 19) permits an inference of intentional spoliation. Moreover, when pressed by the Court about the significance of the Alibaba.com materials that Quick Fitting did find on the internet (as well as the Alibaba.com materials that the Wai Feng

parties produced), Quick Fitting conceded that they prove nothing beyond "context and background to Mr. Crompton's state of mind." R+R I at n.40. Quick Fitting also does not explain how the computer of a former employee from 2011 (who handled Alibaba.com postings) was subject to a duty to preserve (ASI # 20). And Quick Fitting provides nothing from which the Court could infer that the Wai Feng parties actually responded to the handful of inquiries about push-fit that it received through Alibaba.com, never mind that those responses were intentionally spoliated (ASI # 17). Nor does it attempt to overcome the Court's ruling in denying the 2015 motion, which rejected the proposition that the lack of Alibaba.com ESI was proof of intentional misconduct or spoliation.

Quick Fitting's motion as to ASI # 17-20 is denied.

<u>Push-Fit Samples and Documents Related to Purchases for Testing (ASI # 21-22)</u>. Apparently, at some time in 2013 or 2014, the Wai Feng parties, aware that Quick Fitting was defending its failure to pay by claiming that plumbing products delivered by EFF Manufactory have excessive lead content, arranged to purchase Quick Fitting items on the open market ("in stores") and tested them for lead content. WF Ex. A ¶ 20. The resulting tests show excessively high lead-readings. The record does not reveal whether this endeavor was work product, conducted on advice of counsel, including whether the test results will be presented as trial evidence, and if so, what they will be presented to prove. While it appears that one of the items that was purchased and tested is at the office of the Wai Feng parties' counsel and was made available to Quick Fitting's counsel for inspection, the remaining items have been lost. It is also unclear whether the underlying purchase records have also been lost or were not produced because they were never requested. Nevertheless, unlike most of the other ASI covered by Quick Fitting's spoliation motion, ASI # 21-22 are evidence that existed at a time when they

were also clearly relevant to an issue in the case (namely, lead content). Since then, they have been lost.

As intentional spoliation, this loss runs into the buzz-saw of the Court's ruling on the 2015 motion, which rejected intent as the basis for the loss of these Items; with no evidence of intent or bad faith presented now, the Court does not see any reason to reopen that ruling. However, in ruling on the 2015 motion, the Court did not address whether the loss of these Items might inflict prejudice on Quick Fitting. If it does, a sanction short of an adverse inference (such as preclusion) may well be appropriate, whether the loss is analyzed under the case law applicable to physical evidence for the samples or under Fed. R. Civ. P. 37(e) for electronic copies of the purchase documents. See Fed. R. Civ. P. 37(e)(1) (preclusion order appropriate if necessary to cure the prejudice); Trull, 187 F.3d at 95-96 (remedy for spoliation based on prejudice must be closely calibrated to what is necessary to address harm).

For now, however, with no indication why the tests were done, whether they will be offered in evidence or what they will be offered to prove, the Court finds that it is premature to determine whether a sanction is necessary to cure any prejudice from the loss of these Items. For example, hypothetically, the Wai Feng parties might offer these lead-content test results as evidence that Quick Fitting routinely sold plumbing parts with high lead content. In that event, Quick Fitting's ability to defend itself could be impaired by its inability to examine any but one of the precise items on which the results were based. These issues will be brought into focus at trial, when the Court will be able "to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence[.]" Sharp, 872 F.3d at 42. Accordingly, while the motion for an adverse inference instruction is denied as to ASI # 21-22, the motion for a curative sanction is denied without prejudice to being raised at trial.

Recycling of Andrew Yung's Computer (ASI # 23).  Andrew Yung testified that he recycled his laptop sometime in 2013, but that the only business documents on it were emails, which were backed up in the Google "cloud" storage for his email address.  WF Ex. A ¶ 7.  Quick Fitting presents no evidence tending to prove that the recycling of the laptop was not done in the ordinary course of business, that the failure to do more to preserve its electronic content was intentional or that Quick Fitting is prejudiced because specific relevant material was actually lost.  With little foundation beyond its disappointment with its failure to find evidence that the Wai Feng parties sold Quick Fitting proprietary push-fit to any person or entity other than Quick Fitting itself, Quick Fitting nevertheless asks for the sweeping adverse inference that anything that might have been on the laptop would be harmful to the Wai Feng parties.  In resolving Quick Fitting's 2015 motion, the Court addressed and rejected the proposition that the recycling of this laptop amounted to spoliation or was done with "the intent to deprive another party of the information's use in the litigation[.]"  Fed. R. Civ. P. 37(e)(2).  Quick Fitting has added nothing new to buttress its second attempt to procure sanctions for the same conduct.  With no evidence of intent and no showing of prejudice, the motion based on ASI # 23 is denied.

Recycling of Emerson Wang's computer (ASI # 24).  Quick Fitting did not include ASI # 24 in the 2015 motion, so the Court has not already addressed it.  Otherwise, Quick Fitting's motion for an adverse inference based on the recycling of Emerson Wang's computer fails for the same reasons why the Court rejected the motion as to Andrew Yung's laptop.  Quick Fitting has made no attempt to establish either prejudice from the loss of a specific document or record or that the computer's recycling was done intentionally to deprive it of relevant evidence.  Nor does Quick Fitting respond to the Wai Feng parties' proffer establishing that, after Wang's July

2013 departure, his email account was not taken down. WF Ex. P. Based on these deficits, the spoliation motion based on ASI # 24 is denied.

## IV.    CONCLUSION

Based on the foregoing, Quick Fitting's spoliation motion (ECF No. 220) is denied, except that, as to Allegedly Spoliated Items # 21-22, the motion is denied without prejudice to Quick Fitting seeking whatever sanction may be necessary to cure demonstrated prejudice from the loss of the Items at the time of trial. Further, to the extent that the evidence presented at trial establishes or permits the inference that the prerequisites for a spoliation remedy exist as to any specific lost item of evidence, the Court's denial of this motion is not an impediment to either party seeking an adverse inference instruction or a curative sanction (such as preclusion) at that time.

So ordered.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 7, 2019